IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 2, 2003 Session

## MARK EDWARD IGOU v. DINAH CAROL IGOU

**Appeal from the Chancery Court for Hamilton County**
**No. 02-0814     Frank W. Brown, III, Chancellor**
**FILED FEBRUARY 25, 2004**

**No. E2003-00253-COA-R3-CV**

---

Mark Edward Igou ("Husband") sued Dinah Carol Igou ("Wife) for a divorce. After trial, the Trial Court awarded Wife alimony only to the extent of requiring Husband to "pay all cost of tuition, books, fees, and other charges relating to [Wife's] obtaining a master's degree whether it's in education or any other related field which will increase her compensation" with the restrictions that Wife must complete the course of study within five years from the entry of the Trial Court's order and that Wife must achieve passing grades. Wife appeals the Trial Court's judgment as to alimony and attorney fees. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and CHARLES D. SUSANO, JR., J., joined.

Phillip C. Lawrence, Chattanooga, Tennessee, for the Appellant, Dinah Carol Igou.

Steven M. Jacoway, Chattanooga, Tennessee, for the Appellee, Mark Edward Igou.

### OPINION

### Background

After 22 years of marriage, Husband filed for divorce in August of 2002. Husband and Wife have two daughters, only one of which was a minor at the time of the trial. The case was tried in November of 2002.

At the time of trial, Husband was 48 years old and resided at his parent's home with his minor daughter and his emancipated daughter, who was home on break from college. Husband holds a bachelor of science degree in business administration and is a licensed CPA. From 1984 until March of 2002, Husband worked for Lee Smith, Inc., a commercial truck dealership, earning approximately $10,000 per month plus a discretionary bonus. His bonus totaled $75,000 during his last year of employment there. Husband held several positions during his employment at Lee Smith, Inc. including controller, treasurer, secretary, service manager, and vice president of operations. In March of 2002, Husband was fired from Lee Smith, Inc. due to disagreements with management.

Husband was out of work for approximately three weeks. During that time, he "contacted accounting temps . . . interviewed with a CPA firm here in town . . . talked to a truck equipment manufacturer in town . . . [and] contacted probably well over 150 business acquaintances and friends . . . looking for a position . . . ." In April of 2002, Husband accepted a job with Land Rover of Chattanooga. Currently, Husband is paid $8,000 a month, receives a quarterly bonus based upon a customer satisfaction index, and will get one percent of company profits, if any, at the end of the year. Husband stated that as of the time of trial there were no company profits in the then current year because "[t]he dealership just opened in 2000" and has had sporadic vehicle sales and expenses related to adding a new product line, and, therefore, he would not get any bonus that year. Husband also drives a demonstrator vehicle that counts as a taxable benefit.

Wife, who was 47 years old at the time of trial, teaches fourth grade. She was teaching when she and Husband married and continued to work until just before their first child was born. Wife returned to teaching when their second child was approximately five years old. Wife states "I plan on teaching as long as I'm physically able to teach." Wife's take home pay is approximately $2,500 per month during the school year. She does not get paid during the summer. Wife made withdrawals from the parties' money market account totaling $13,000 shortly after the parties separated, and used the money to buy back some years on her retirement account for the years she stayed home with their children.

Wife testified her long-term career goal is to get a master's degree. She stated a master's degree would increase her pay by approximately $3,000 a year before taxes and would take approximately two years to complete. Wife further testified "I need to get a master's for sure to increase my pay a little bit." She stated "[i]f I can swing it financially. If I can swing it, I would certainly like to [get a master's]."

Both Husband and Wife are in good health although Husband has high liver enzymes and Wife had a problem approximately ten years ago with melanoma. Husband's condition requires he give a unit of blood periodically to "keep the blood count, red blood cells down because of a build up of iron in my system." Husband states that this health condition "does not really affect my day-to-day activities." Wife periodically has moles removed and tested. She states that eight of the last twelve moles were pre-melanoma.

The marital home is a two-story house with five bedrooms, three bathrooms, a bonus room, and a two car garage. The house needed some repairs and new siding, and the parties signed a contract to have this work done. The marital home has a first mortgage and a second mortgage. Husband has continued paying the mortgage on the marital home, some of the utilities, and the life insurance since the separation.

The parties' daughters have attended a private school in Chattanooga. The parties' younger daughter, who was 16 years old at the time of trial, still attends this school. At the time of trial, the younger daughter's tuition for the second semester was due in the amount of approximately $5,100. College tuition for the older daughter also was coming due in the amount of approximately $13,500. The older daughter also needed approximately another $4,000 for room and board and books for the semester. Wife maintains insurance on both of the children through her employer at a cost of approximately $90 per month. Both of the children drive and each has a car that belongs to the parties.

Husband described the marriage as "tumultuous" and testified he had filed for divorce in 1997. However, the parties reconciled and began living together again in December of 1997. Husband states that there has been a pattern of conflict between them regarding how the children should be disciplined. Husband confesses he committed adultery in 1987 or 1988 and again in 1999 or 2000. He explained that an incident regarding getting their younger daughter to complete homework precipitated the parties' current separation. This incident occurred in August of 2002, and caused him and the two daughters to leave the marital home that day. Husband did not return to the marital home.

Wife states she shares "[v]ery little" blame for the problems in the marriage and her alienation from her daughters. Wife, however, admitted to urinating on the floor of the marital home on two occasions in Husband's presence because she was angry. Wife claimed she was angry the first time she did this because her older daughter was monopolizing one of the three bathrooms in the parties' home.

When questioned regarding whether she wanted the Court to find a way to use marital funds to pay for the younger daughter to attend private school for her junior and senior years, Wife responded: "I would like to think that she could. Quite frankly, divorce changes a lot of things financially." Wife states she really doesn't want to sell the marital home to pay for two more years of tuition at her younger daughter's private school. Wife stated "I'm scared to death about the money."

Wife states that she and her older daughter argue over college funds, and that the older daughter says things to her on the phone like "mother, you're so selfish, you know, you need to pay for my college." Husband wants to use the monies in the Bank of America money market fund for the daughters' education, but Wife does not want to use this money to guarantee the daughters' education. Regarding her older daughter's education, Wife states:

I'm 47 years old. I've got to think about starting to save some money to pay some bills. I have to think about a house payment wherever I live, utilities, a lot of things on my own now and, unfortunately, that does affect her college at choosing a 28 or $30,000 a year school.

She does have funds of her own. She's very, very bright. She's given up scholarships. She could have gone to Furman and Rhodes on a scholarship and on and on.

In the Final Decree of Divorce entered December 27, 2002, the Trial Court, *inter alia*, declared the parties divorced pursuant to Tenn. Code Ann. § 36-4-129(B), ordered the sale of the marital home, divided the marital property and debts with Husband "getting a little bit under 50 percent," of the marital property. The Trial Court, *inter alia*, awarded Wife $75,000 of the first $100,000 equity when the marital home is sold with the parties to split equally any equity above the first $100,000. The Trial Court also designated Husband as the custodial parent of the younger daughter with Wife obligated to pay child support pursuant to the Trial Court's previous order, and relieved Wife of any responsibility for paying for the younger daughter's private school education. However, the Trial Court suggested Wife contribute to the younger daughters' education in order to help repair the strained relationship between Wife and her daughter. The Trial Court stated it did not have "the power, the jurisdiction or the authority" to make either party pay the older daughter's college tuition since she is an adult. Wife was awarded alimony only to the extent the Trial Court required Husband "pay all cost of tuition, books, fees, and other charges relating to [Wife's] obtaining a master's degree whether it's in education or any other related field which will increase her compensation" with the restrictions that Wife must complete the course of study within five years from the entry of the Trial Court's order and that Wife must achieve passing grades. The Trial Court capped this award at the amount it would cost for Wife to attend a state university or state college. The parties each were ordered to pay their own attorney's fees, but Husband was ordered to pay court costs.

Wife filed a motion to alter or amend. The Trial Court entered a Memorandum Opinion and Order on January 9, 2003, *inter alia*, declining to award Wife temporary and rehabilitative alimony and declining to award Wife her attorney's fees. The Trial Court stated it denied attorney's fees in part because the parties have numerous and "sufficient assets for each party to pay his/her own attorney fees." The Trial Court also found that Wife was not economically disadvantaged. The Trial Court stated that Wife has been a teacher, her chosen profession, for over ten years and that her income has been stable, whereas Husband's income "had been cut more than in half within the last year or so. This is not a case where a spouse needs to go to college to earn a degree. [Wife] has been in the workplace for a long time and earns between $41,000.00 and $42,000.00 annually as a teacher." The Trial Court also stated it had made an award of marital property that was advantageous to Wife. The Trial Court stated it left Wife with very little debt compared to the debt assigned to Husband. The Memorandum Opinion and Order states, in part:

-4-

[T]he court is of the opinion that the financial burden of educating the parties' daughters will be upon [Husband]. The court is not convinced that [Wife] will assist in the [private school] tuition for [the younger daughter], much less assist the older, emancipated daughter . . . with her college tuition and expense. The court took into consideration that [Husband's] income would be spread out and used for three people whereas [Wife's] income (and her marital property) would be used for one person.

Wife also raised in her motion an issue regarding payment of the mortgage on the marital home prior to sale. The Trial Court considered this issue and determined Wife's finances would be tight until the house sold. The Trial Court deferred Wife's child support payment of $551 per month from November of 2002, until April of 2003. In addition, the Trial Court ordered Husband to give Wife a check in the amount of $500 per month beginning in January of 2003, and continuing through April of 2003, as a loan to assist Wife in the mortgage payment until the house sells. The Trial Court ordered that when the house sold, Wife was to repay Husband at the closing for the child support payments and the monies loaned.

Wife appeals to this Court.

### Discussion

Wife raises two issues on appeal: 1) whether the Trial Court abused its discretion in awarding alimony in the form of requiring Husband to pay certain educational costs for Wife instead of requiring the payment of a definite sum of money for a definite term, and whether the amount and duration of the payment is inadequate and insufficient; and, 2) whether the Trial Court erred in failing to award Wife her attorney's fees at trial and whether Wife is entitled to an award of attorney's fees on appeal.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first will discuss Wife's issues regarding alimony. Wife argues that the Trial Court erred by requiring Husband to pay only her educational costs rather than paying a set sum of money for a set term, and that in any event the amount of alimony the Trial Court ordered Husband to pay is too little for too short a time.

Determinations concerning the amount and duration of alimony are factually driven and require a balancing of the various factors contained in Tenn. Code Ann. § 36-5-101(d)(1). *Herrera v. Herrera*, 944 S.W.2d 379, 387-88 (Tenn. Ct. App. 1996). Our legislature specifically provided:

It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1) (2002).[1] Furthermore, while a trial court must consider all relevant statutory factors to determine if an economically disadvantaged spouse can be rehabilitated, the most important statutory factors are the disadvantaged spouse's need and the other spouse's ability to pay. *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Robertson v. Robertson*, 76 S.W.3d 337, 342 (Tenn. 2002).

The Trial Court carefully considered all of the relevant factors in making the award of alimony, including that Wife has been in the work force for a number of years working at her chosen profession, the division of the marital property, that the Trial Court left Wife with very little debt compared to Husband, and that Wife expressed a desire to obtain a master's degree to increase her income. In its Memorandum Opinion and Order entered January 9, 2003, the Trial Court found that Wife is not economically disadvantaged. The Trial Court based this finding upon its findings that Wife had been in the workforce for many years working in her chosen profession and had a good established income from her chosen profession. While the Trial Court characterized its award of alimony as neither rehabilitative nor periodic, we believe the alimony award is, in fact, rehabilitative in nature. The evidence considered in light of the relevant statutory factors does not preponderate against the Trial Court's findings resulting in the award of this rehabilitative alimony.

We next consider whether the Trial Court abused its discretion in awarding alimony in the form it did by requiring Husband to pay certain educational costs for Wife instead of requiring the payment of a definite and higher sum of money for a definite and longer term.

Trial courts have wide discretion in awarding alimony, including the discretion to make alimony subject to conditions imposed by the court. *Carr v. Carr*, No. W2000-02420-COA-R3-CV, 2001 Tenn. App. LEXIS 749, at * 18 (Tenn. Ct. App. Oct. 3, 2001), *appl. perm. appeal denied April 1, 2002*. Our Supreme Court discussed the abuse of discretion standard in *Eldridge v. Eldridge*, stating:

---

[1] The version of Tenn. Code Ann § 36-5-101(d)(1) applied and cited above now has been amended, but this amendment is not applicable to this divorce.

Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made." A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citations omitted).

Appellate courts ordinarily permit discretionary decisions to stand when reasonable judicial minds can differ concerning their soundness. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999). A trial court's discretionary decision must take into account applicable law and be consistent with the facts before the court. *Id.* When reviewing a discretionary decision by the trial court, the "appellate courts should begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision." *Id.*

When crafting the alimony award, the Trial Court considered Wife's stated long-term career goal of obtaining a master's degree and Wife's assertion that obtaining such a degree would increase her income from her chosen profession. Wife argues she

> objects to the somewhat servile posture of having to approach [Husband] on a periodic cycle to obtain the funds necessary for her education. [Wife] is an educated and mature individual, at least equal in stature to [Husband] and no longer under any type of dominion or control that a marital status might have suggested at some time during the parties' marriage. To retain this vestige of paternalism is abhorrent to [Wife] as it may well be to other spouses no longer in the bonds of marriage. Unless a spouse receiving support is under some disability that would require payment of alimony in the form ordered by the trial court in this case or a similar form, an alimony should be afforded the dignity of receiving payment from a former spouse in a form that is as free as it can be from the exercise of any discretion from the obligor spouse.

The Trial Court's award gives Husband no discretion regarding the payment of this alimony. Husband is required to "pay all cost of tuition, books, fees, and other charges relating to [Wife's] obtaining a master's degree whether it's in education or any other related field which will increase her compensation." If Wife completes the course of study within five years and achieves passing grades, Husband must pay "all cost of tuition, books, fees, and other charges" related to the degree. Husband has no discretion regarding when, whether, or how much to pay. In addition, we note that this award of rehabilitative alimony in this form places Wife in a far less "servile posture" than would an award of long-term alimony, for which Wife argues. We believe that reasonable minds could disagree as to the propriety of the decision made by the Trial Court, the very essence of a discretionary decision. Given this, we will not substitute our judgment for that of the Trial Court, and, therefore, we affirm the Trial Court's award of this rehabilitative alimony in all respects.

We next consider whether the Trial Court erred in failing to award Wife her attorney's fees at trial and whether Wife is entitled to an award of attorney's fees on appeal. As noted by this Court in *Yount v. Yount*:

> [A]n award of such fees in a divorce case is considered to be a part of the alimony awarded. *Storey v. Storey*, 835 S.W.2d 593 (Tenn. Ct. App. 1992). As such, in determining whether to award attorney fees, the trial court should consider all the relevant statutory factors, including the relative fault of the parties. *Lindsey v. Lindsey*, 976 S.W.2d 175 (Tenn. Ct. App. 1997). It is considered most appropriate where the final decree of divorce does not provide the obligee spouse with a source of funds, such as from property division or alimony in solido, with which to pay his or her attorney. *Houghland v. Houghland*, 844 S.W.2d 619 (Tenn. Ct. App. 1992). An award of attorney fees is considered to be within the sound discretion of the trial court, and will not be reversed on appeal if that discretion is not abused. *Garfinkel v. Garfinkel*, 945 S.W.2d 744 (Tenn. Ct. App. 1996).

*Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002). The Trial Court found that "these parties have numerous assets. The house should have much equity when sold." The Trial Court then specifically found that Husband and Wife each has sufficient assets to pay his or her own attorney fees. The evidence in the record before us does not preponderate against these findings by the Trial Court. After considering all of the relevant factors as discussed above, we cannot conclude that the Trial Court abused its discretion when it refused to award Wife her attorney fees. The judgment of the Trial Court on this issue is, therefore, affirmed. Likewise, after considering all relevant factors, we also decline to award Wife her attorney fees for this appeal.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the Appellant, Dinah Carol Igou, and her surety.

_____
D. MICHAEL SWINEY, JUDGE