IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 26, 2006 Session

## PHILLIP WAYNE CROCKER v. NANCY JO REECE CROCKER

**A Direct Appeal from the Chancery Court for Gibson County**
**No. 16163     The Honorable George R. Ellis, Chancellor**

_____

**No. W2006-00353-COA-R3-CV - Filed December 11, 2006**

_____

This case involves a divorce ending a five year marriage. Wife/Appellee was awarded a divorce on grounds of Husband/Appellant's inappropriate marital conduct. The trial court awarded Wife/Appellee alimony *in futuro*. Husband/Appellant appeals the award of alimony *in futuro*. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Mary Jo Middlebrooks and Betty S. Scott of Jackson, Tennessee for Appellant, Phillip Wayne Crocker
Michael A. Carter of Milan, Tennessee for Appellee Nancy Jo Reece Crocker

**OPINION**

Phillip Wayne Crocker ("Husband," or "Appellant") and Nancy Jo Reece Crocker ("Wife," or "Appellee") were married on August 15, 1999. This marriage was Mr. Crocker's fifth marriage and Ms. Crocker's second. At the time of the marriage, Mr. Crocker was fifty years old, and was a self-employed farmer. Ms. Crocker was forty-seven years old, and was employed as a housekeeper. In 2000, Ms. Crocker developed rheumatoid arthritis and osteoarthritis and was unable to continue work.

The parties separated in October 2002. On October 7, 2002, Mr. Crocker filed a "Complaint for Absolute Divorce" against Ms. Crocker, alleging grounds of irreconcilable differences and inappropriate marital conduct on the part of Ms. Crocker. On October 21, 2002, Ms. Crocker filed an "Answer and Counter-Complaint," in which Ms. Crocker denied the material allegations of Mr. Crocker's complaint and alleged, as grounds for her counter-complaint, that Mr. Crocker had carried on an extramarital affair, had deserted and abandoned her, had engaged in conduct constituting

extreme mental cruelty, had threatened her, and had withdrawn marital funds from a joint account thereby leaving her destitute. In her counter-complaint, Ms. Crocker asks for alimony. On December 3, 2002, Mr. Crocker filed his answer, in which he denies the material allegations of the counter-complaint.

On February 21, 2003, the trial court entered an "Order for Support Pendente Lite," which ordered Mr. Crocker to pay Ms. Crocker $1,500.00 per month as temporary alimony. Mr. Crocker was further ordered to continue paying the mortgage and insurance on the marital residence. A hearing took place on May 25, 2004 and August 4, 2004. On October 7, 2004, the trial court entered its "Final Decree," granting Ms. Crocker a divorce on grounds of adultery on the part of Mr. Crocker. Concerning alimony, the Final Decree reads, in pertinent part, as follows:

> 7. The Court finds that Nancy Jo Reece Crocker suffers from a severe case of rheumatoid arthritis which has left her disabled since 2000 and that she is economically disadvantaged. She is presently taking fifteen medications, breathing treatments and $2241.04 a month in shots for disability. The Court further finds that she has no financial resources, nor capacity to produce income and that she is in need of alimony for mere survival until her death.
>
> 8. Though Phillip Wayne Crocker urges the Court that he's lost money in farming over the la[st] few years, however, the Court finds that Exhibits 17 through 21 evidence that Phillip Wayne Crocker's net worth has increased from $962,137 in December 1999, to $1,098,397 in February of 2004. The Court, therefore, orders that Phillip Wayne Crocker shall pay to Nancy Jo Crocker Three Thousand ($3,000) a month alimony in futuro for the rest of her life or until she remarries, the first payment being due on the 1st day of October, 2004, and payable on the 1st day of each month thereafter. The figure is based on the assumption that her medical bills will be paid by Medicare and TennCare.
>
> 9. Further, the Court finds that Phillip Wayne Crocker's actions were the cause of the rupture of this marriage, and he is ordered to pay the cost and attorney's fees of Nancy Jo Reece Crocker as alimony in solido, to be supported by the time sheets.

On November 4, 2004, Mr. Crocker filed a "Motion to Alter or Amend" the October 7, 2004 Order seeking, *inter alia*, removal of his separate property from the list of marital property, and clarification concerning the marital debt. Mr. Crocker does not, however, ask for relief from the alimony award in his "Motion to Alter or Amend."

On December 14, 2004, Ms. Crocker filed a "Petition for Contempt" against Mr. Crocker asserting that he was $6,000.00 in arrears on his alimony payments. On February 28, 2005, the parties entered into a "Consent Order." The Consent Order acknowledges Mr. Crocker's payment of $4,000.00 toward his alimony arrearage. Concerning the remaining arrearage, the parties agreed to hold same "in abeyance pending either settlement by the parties or ruling of the court." The parties also agreed to a settlement meeting to attempt resolution of all issues in dispute.

On July 25, 2005, Ms. Crocker filed a "Motion to Dismiss Plaintiff's Motion to Alter or Amend." This motion indicates that the parties held a settlement meeting on April 28, 2005 at which time Ms. Crocker "made a good faith offer," and Mr. Crocker, "for reasons unknown to [Ms. Crocker], never responded to the offer."

On January 4, 2006, a second "Consent Order" was entered. This Consent Order settles the issues of marital debt and marital property. In addition, Mr. Crocker agreed to pay Ms. Crocker "One Hundred Seventy Thousand Dollars ($170,000) in a lump sum," which sum "represents a division of marital property and is not alimony." Mr. Crocker also agreed to pay Ms. Crocker's attorney's fees. However, the Consent Order specifically states that the "Consent Order does not affect the judgment of the trial court awarding Wife alimony in futuro of Three Thousand ($3,000) per month."

Mr. Crocker appeals and raises two issues for review as stated in his brief:

> I. Whether the trial court erred in awarding Wife alimony in futuro after a five year marriage.
>
> II. Whether this Honorable Court should award Husband attorney's fees and costs incurred for this appeal.

Ms. Crocker also asks for attorney's fees and costs incurred in defending this appeal.

We first note that, because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm absent error of law. *See* Tenn. R. App. P. 13(d). Furthermore, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn.1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn.Ct.App.1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See id.*; *see also Walton v. Young*, 950 S.W .2d 956, 959 (Tenn.1997).

Tennessee law recognizes several separate classes of spousal support, including long-term spousal support (alimony *in futuro* ),[1] alimony in solido,[2] rehabilitiative spousal support[3], and transitional spousal support.[4]  T.C.A.. § 36-5-121(d)(2) (2005) reflects a statutory preference favoring rehabiltitative spousal support and transitional spousal support over long-term spousal support. ***See also Bratton v. Bratton***, 136 S.W.3d 595, 605 (Tenn. 2001); ***Perry v. Perry***, 114 S.W.3d 465, 467 (Tenn.2003); ***Crabtree v. Crabtree***, 16 S.W.3d 356, 358 (Tenn.2000). However, this statutory preference does not entirely displace the other forms of spousal support when the facts of the case warrant long-term or more open-ended support. ***Aaron v. Aaron***, 909 S.W.2d 408, 410 (Tenn.1995).

Because the amount, if any, and type of alimony to be awarded is within the sound discretion of the trial court in view of the particular circumstances of the case, appellate courts will not alter such awards absent an abuse of discretion. ***Lindsey v. Lindsey***, 976 S.W.2d 175, 180 (Tenn.Ct.App.1997).  Under T.C.A. § 36-5-121(i), relevant factors to be considered in deciding whether to award alimony include:

> (1) The relative earning capacity, obligations, needs, and financial
> resources of each party including income from pension, profit sharing
> or retirement plans and all other sources;
> (2) The relative education and training of each party, the ability and
> opportunity of each party to secure such education and training, and
> the necessity of a party to secure further education and training to
> improve such party's earning capacity to a reasonable level;
> (3) The duration of the marriage;

---

[1] Long-term spousal support is intended to provide long-term support to an economically disadvantaged spouse who is unable to be rehabilitated. ***Burlew v. Burlew***, 40 S.W.3d 465, 471 (Tenn. 2004); ***Loria v. Loria***, 952 S.W.2d 836, 838 (Tenn.Ct.App.1997). It is not, however, a guarantee that the recipient spouse will forever be able to enjoy a lifestyle equal to that of the obligor spouse. ***Wright v. Quillen***, 83 S.W.3d 768, 773 (Tenn.Ct.App.2002).

[2] Alimony in solido is a single lump sum payment of cash or property. ***Loria v. Loria***, 952 S.W.2d 836, 838 (Tenn. Ct. App. 1997). Unlike alimony *in futuro*, it is considered a final judgment, ordinarily unchangeable by the court after the expiration of the time for appeal. ***Id.*** at 838.

[3] Rehabilitative spousal support is intended to enable an economically disadvantaged spouse to acquire additional education or training that will enable the spouse to achieve and maintain a standard of living comparable to the standard of living that existed during the marriage or to the post-divorce standard of living expected to be available to the other spouse. T.C.A.. § 36-5-121(e)(1); *see also Robertson v. Robertson*, 76 S.W.3d 337, 340-41(Tenn. 2002); ***Smith v. Smith***, 912 S.W.2d 155, 160 (Tenn.Ct.App.1995).

[4] Transitional spousal support is paid for a definite duration when a court finds that rehabilitation is not necessary but that the economically disadvantaged spouse needs assistance adjusting to the economic consequences of divorce. T.C.A. § 36-5-121(g)(1).

(4) The age and mental condition of each party;
(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
(6) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
(7) The separate assets of each party, both real and personal, tangible and intangible;
(8) The provisions made with regard to the marital property as defined in § 36-4-121;
(9) The standard of living of the parties established during the marriage;
(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
(11) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and
(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Among these factors, the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay. **Robertson v. Robertson**, 76 S.W.3d 337, 342 (Tenn. 2002); **Bogan v. Bogan**, 60 S.W.3d 721, 730 (Tenn. 2001); **Sullivan v. Sullivan**, 107 S.W.3d 507, 510 (Tenn.Ct.App.2002). Of these two factors, the disadvantaged spouse's need is the threshold consideration. **Aaron v. Aaron**, 909 S.W.2d 408, 410 (Tenn. 1995); **Watters v. Watters**, 22 S.W.3d 817, 821 (Tenn.Ct.App.1999).

In the instant case, the trial court found that Ms. Crocker needed alimony "for mere survival until her death." Mr. Crocker appeals the award of alimony *in futuro*, claiming that, given the short duration of the marriage and the fact that the adjusted gross income figures on his tax returns from 2000 to 2003 were losses, he lacks the ability to pay. Turning to the record before us, it is clear that Ms. Crocker is economically disadvantaged. She testified that her only income (notwithstanding alimony) is $548 per month in disability payments. Concerning whether Ms. Crocker is able to work, the deposition testimony of her treating physician, Dr. Jacob A. Aelion, reads, in pertinent part, as follows:[5]

> Q. Can you describe in layman's terms what that [rheumatoid arthritis] is and how that–

---

[5] Dr. Aelion is a rheumatologist. His deposition was introduced as Exhibit 1 at the hearing.

A.   Rheumatoid arthritis is typically a lifelong condition, painful condition of the joints, in which there is chronic inflammation in the inner lining of multiple joints which usually affect the joints in a symmetrical distribution, and affects every joint in the body except for the joints of the spine.  The clinical manifestations are swelling, stiffness and, as time goes on, if we don't control the disease, destruction of the joints and subsequent loss of function.

Q.  Does the condition that Mrs. Crocker has render her disabled?

A.  Rheumatoid arthritis can run a mild or a more severe course, and if a patient–like Mrs. Crocker's case, it's run a–and still running a severe course.  She was being disabled by 2000 or so.

Q. Okay.  In your professional medical opinion, is that condition and her disability likely to continue for the duration of her life?

A.  I think that's the case with Mrs. Crocker, yes.

During the course of the hearing, there was some testimony inferring that Ms. Crocker had exaggerated her symptoms.  Mr. Crocker's counsel called Billy Romines, the parties' next-door neighbor, who testified that he had seen Ms. Crocker picking up pecans in her yard without the aid of a cane.  However, Dr. Aelion testified, in relevant part:

Q.  If someone was in your office and came in using a cane and limping, saying to you that there was pain, and then was seen later in the day not using a cane and not having problems in their gait, would that be unusual in a case of rheumatoid arthritis?

A.  It depends on what I did with that patient when I saw her earlier in the day.  If she came in earlier in the day and I gave her a cortisone shot or some medication, it could alleviate some of the symptoms short term, and some of the treatment modalities can kick in very quickly.

Q.  So, that would not be unusual?

A.  Wouldn't be unusual.

*                                          *                                    *

Q. ...Dr. Aelion, in your opinion, has Mrs. Crocker exaggerated or feigned her pain?

A.  I don't think so.

From the entire record, it appears that the evidence does not preponderate against the trial court's finding that Ms. Crocker is economically disadvantaged and that she is not capable of rehabilitation. This finding satisfies the threshold requirement for ordering alimony *in futuro* as set out at T.C.A. § 36-5-121(d)(3), to wit:

> Where there is relative economic disadvantage and rehabilitation is not feasible, in consideration of all relevant factors, including those set out in subsection (i), the court may grant an order for payment of support and maintenance on a long-term basis or until death or remarriage of the recipient....

On appeal, Mr. Crocker asserts that alimony *in futuro* is not warranted given the short duration of the marriage.  He relies upon *Duncan v. Duncan*, 686 S.W.2d 568 (Tenn. Ct. App. 1984) for this assertion.  In *Duncan*, this Court affirmed the denial of alimony *in futuro* to wife.  However, unlike the case at bar, the wife in *Duncan* was not disabled and had an income of $5,790.00 per month.  While we concede that Mr. Crocker and Ms. Crocker were married for only five years, duration of the marriage is only one of the relevant factors to be considered in deciding whether, and in what amount, to award alimony.  *See* T.C.A. § 36-5-121(I), *supra*.

Concerning Mr. Crocker's ability to pay alimony, he contends that he does not have sufficient funds to pay based upon his tax returns, which show consistent losses.  This Court, however, must consider the total record before it.  While the tax returns do indicate yearly losses, the personal financial statements, filed with the bank, show Mr. Crocker's net worth increasing each year.  Mr. Crocker contends that the discrepancy between the tax returns and the financial statements is due to appreciation in the value of real property.  However, there is no evidence (other than Mr. Crocker's counsel's argument) to support this contention.  Furthermore, Mr. Crocker's financial statements, which he testified are accurate, show his gross income to be approximately $200,000.00 per year.

The remaining factors regarding alimony, with the exception of the duration of the marriage, also weigh in favor of alimony *in futuro*.  Ms. Crocker was fifty-two years old at the time of the hearing, she has a high school diploma, and, as discussed above, is permanently disabled.  From the record, there is no indication that Mr. Crocker has any physical barriers to hinder him from working. By all accounts his work as a farmer has provided a more than decent living for him.

Regarding the issue of relative fault, the trial court granted Ms. Crocker a divorce based upon Mr. Crocker admitted affair with Connie Curtis.  Although Mr. Crocker admits to the affair, he contends that his relationship with Ms. Curtis did not evolve until his separation from Ms. Crocker. The fact remains that Mr. Crocker carried on a relationship with Ms. Curtis prior to his divorce.  Mr. Crocker contends that Ms. Crocker's children from a previous marriage were instrumental in the demise of the marriage.  There is, however, no specific evidence, with the exception of Mr. Crocker's statement that Ms. Crocker's children "tore up" his three-wheeler, to support this

contention. Rather, the evidence supports a finding that Mr. Crocker decided to leave Ms. Crocker while Ms. Crocker was ill, that Mr. Crocker pursued a "friendship" with Kathleen Henderson over Ms. Crocker's objection, and carried on an affair with Ms. Curtis. Although we concede that there is usually some level of fault on the part of each party to a divorce, the record in this case supports the trial court's finding that the majority of fault for the demise of this marriage should be placed at the feet of Mr. Crocker.

Reviewing Ms. Crocker's expenses and excluding the automobile payment, and the mortgage payment (due to the division of marital property agreed to by the parties), and in light of the totality of the circumstances in this case as discussed above, we are of the opinion that the award of $3,000 per month in alimony *in futuro* is justified in this case.

Each party asks this Court to award his or her attorney's fees and costs incurred in defending this appeal. In addressing requests for attorney's fees on appeal, we are guided by the following: Our Courts have defined the factors that should be applied when considering a request for attorney's fees incurred on appeal. These factors include the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered. ***Dulin v. Dulin***, No. W2001-02969-COA-R3-CV, 2003 WL 22071454 (Tenn.Ct.App. Sept. 3.2003) (citing ***Folk v. Folk***, 357 S.W.2d 828, 829 (Tenn.1962)). In weighing the above factors in light of the particular facts of this case, we find it equitable to deny both requests and for each party to bear his or her own expenses.

For the foregoing reasons, we affirm the Order of the trial court awarding $3,000 per month in alimony *in futuro* to Ms. Crocker. Costs of this appeal are assessed to Appellant, Phillip Wayne Crocker, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.