# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
August 20, 2014 Session

## REBECCA LYNN WILLENBERG v. MARK EDWARD WILLENBERG

**Appeal from the Chancery Court for Williamson County**
**No. 40740      Robbie T. Beal, Chancellor**

**No. M2013-02627-COA-R3-CV – Filed September 23, 2014**

In this divorce action, Husband appeals the trial court's ruling that Wife was incapable of rehabilitation and the award of alimony *in futuro*. Wife also appeals contending that the award of alimony *in futuro* was too low; that the court failed to award her attorney fees; and that the court refused to designate her as the custodian for their son's college account. We reverse the court's ruling that Wife is incapable of rehabilitation and its award of alimony *in futuro*, and remand for further proceedings; in all other respects, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part and Affirmed in Part; Case Remanded.**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P. J., M. S., and ANDY D. BENNETT, J., joined.

Kimpi K. Kendrick, Murfreesboro, Tennessee, for the appellant, Mark Edward Willenberg.

Joanie L. Abernathy, Franklin, Tennessee, for the appellee, Rebecca Lynn Willenberg.

## OPINION

This appeal arises from the divorce of Rebecca Willenberg ("Wife") and Mark Willenberg ("Husband"), who were married on June 2, 1990. On March 9, 2012, Wife filed a Complaint For Absolute Divorce alleging irreconcilable differences and inappropriate marital conduct, in which she requested, *inter alia,* temporary and permanent alimony.

1

On September 1, 2013, the Chancery Court entered a Final Decree of Divorce, declaring the parties divorced pursuant to Tenn. Code Ann. § 36-4-129; the court divided the marital property, assets, and mortgage debt. The court awarded Husband the marital home, valued at $313,000; a 401(k) at a value of $100,000; $110,000 worth of stock; one-half of his pension funds; a 2006 Toyota Avalon, 2000 Dodge Ram, 2002 Nitro Bass boat, as well as fishing equipment and guns; and 100% of any bonuses he received from his employer. Wife was awarded Husband's retirement savings plan valued at $305,000; one-half of Husband's pension funds; a 401(k) in her individual name; and a 2005 Chevy Equinox. Both parties were awarded checking and savings accounts in their individual names, and any furniture, furnishings, and personal property in their possession.

The court held that Wife could not be rehabilitated and awarded her alimony *in futuro* in the amount of $2,000 per month for 12.5 years; she was also awarded alimony *in solido* in the amount of $35,000.[1]

Husband filed a timely appeal contending that the court erred in failing to award rehabilitative alimony and in finding that he was able to increase his income. Wife appeals the amount of alimony *in futuro* awarded, the court's failure to award attorney fees, and the failure to designate her as the custodian of a college account maintained for their son.

## DISCUSSION

### I. AWARD OF SPOUSAL SUPPORT

Trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of support. *See Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996). Pursuant to Tennessee law, a court may award rehabilitative alimony, alimony *in futuro*, transitional alimony, alimony *in solido* or a combination of these. Tenn. Code Ann. § 36-5-121(d)(1). Our Supreme Court, in *Mayfield v. Mayfield,* offered a description of each form of spousal support:

> Alimony *in futuro*, a form of long-term support, is awarded where an economically disadvantaged spouse cannot achieve self-sufficiency and economic rehabilitation is not feasible. Alimony *in solido*, another form of long-term support, is typically awarded to adjust the distribution of the marital estate; it is generally not modifiable and does not terminate upon death or remarriage. Rehabilitative alimony is short-term support that enables an

---

[1] The division of marital property is not in issue on appeal; neither party contests the award of alimony *in solido* or that the court did not award transitional alimony.

economically disadvantaged spouse to obtain education or training and become self-reliant following a divorce. Where economic rehabilitation is unnecessary, transitional alimony, which is intended to assist the disadvantaged spouse in transitioning to the status of a single person, may be awarded.

395 S.W.3d 108, 115 (Tenn. 2012).

Spousal support decisions require a careful balancing of the factors in Tenn. Code Ann. § 36-5-121(i)[2] and typically hinge on the unique facts and circumstances of the case. *See Anderton*, 988 S.W.2d at 683; *see also Hawkins v. Hawkins*, 883 S.W.2d 622, 625 (Tenn. Ct. App. 1994). The two most important factors are the need of the disadvantaged spouse and the obligor's ability to pay. *Varley v. Varley*, 934 S.W.2d 659, 668 (Tenn. Ct. App. 1996). Appellate courts will not alter such awards absent an abuse of discretion. *Riggs v. Riggs*, 250 S.W.3d at 456-57 (Tenn. Ct. App. 2007 (citing *Lindsey v. Lindsey*, 976 S.W.2d 175, 180 (Tenn. Ct. App. 1997)); moreover, the appellate courts are disinclined to second-guess a trial court's decision regarding spousal support unless it is not supported by the

---

[2] The factors are as follows:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
(3) The duration of the marriage;
(4) The age and mental condition of each party;
(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
(7) The separate assets of each party, both real and personal, tangible and intangible;
(8) The provisions made with regard to the marital property, as defined in § 36-4-121;
(9) The standard of living of the parties established during the marriage;
(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and
(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

3

evidence or is contrary to public policy. *Brown v. Brown*, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994).

After dividing the marital assets, the court made the following findings in awarding alimony:

17. Pursuant to the factors in T. C. A. § 36-5-121(2),[3] the Court finds that the Wife is not a candidate for rehabilitation and is entitled to alimony *in futuro* based on the following findings and factors:

a. Husband has greater earning capacity tha[n] that of Wife and even if Wife receives an accounting certificate, she could technically make up to $50,000.00 per year, outside range. Husband earns between $100,000.00 and $120,000.00, depending on bonuses and the Husband has the ability to increase his earning capacity based upon the fact that he's with a well-established company, he has an extremely significant amount of tenure with that company, and the Court assumes he has the ability, even though he's capped out in his current level, to earn more, assuming he's promoted again prior to retirement.

b. Both parties have relatively the same education. However, because the Husband has remained in the same industry for such an extended period of time, his training in a marketable field is substantial. Even if he was to lose his job, the training that he's received would be much more profitable than the Wife's training that she received in college.

c. This is a long-term marriage of 23 years.

d. Both parties are in good physical health; however, both parties are reaching the point where they should be concerned about retirement.

e. The extent that it would be undesirable for a party to seek employment outside the home does not apply.

f. The parties do not have any separate assets of significance, although the Husband has a small inheritance in an investment account.

---

[3] It is apparent that the court meant the citation to be Tenn. Code Ann. § 36-5-121(i).

4

g. The Court believes the division of property has been equitable. Husband has the ability to liquidate any equity in the marital home, but Wife would incur a tax penalty if she liquidated the retirement account she was awarded.

h. The Court believes it should not consider fault against either party.

i. The Wife has become used to a good standard of living.

18. The Court does not think Wife is capable of rehabilitation, so an award of alimony *in futuro* is appropriate. Wife has a need for alimony and Husband has the ability to pay. Wife shall be awarded $35,000.00 as alimony *in solido* to equalize the division of assets, and Husband shall pay Wife this sum within sixty (60) days from July 17, 2013, and said funds shall be made via check made out to Wife and her attorney and shall be delivered to Wife's attorney's office.

19. In order to get Wife to the age of retirement, the Court further awards Wife alimony *in futuro* in the amount of $2,000.00 per month for a period of 12.5 years to begin August 1, 2013 and continue on the first of each month thereafter, for a period of 150 months, or until Wife's death or remarriage, or until Husband's death. In order to secure his alimony obligation to Wife, Husband shall maintain a life insurance policy on his life in the amount of $250,000.00 for a ten (10) year term with Wife named as beneficiary.

Husband contends that the court erred in finding that Wife was not a candidate for rehabilitation and in awarding Wife alimony *in futuro*. He also contends that she is qualified for many jobs in her field, but made no effort to find a position, and did not show an inability to work.

Tenn Code Ann. § 36-5-121(e)(1) addresses the nature and propriety of an award of rehabilitative alimony; the focus is on increasing the disadvantaged spouse's earning capacity.[4] Inherent in the statutory framework is the expectation that, with training or

---

[4] Tenn. Code Ann. § 36-5-121(e)(1) provides:

(e)(1) Rehabilitative alimony is a separate class of spousal support, as distinguished from alimony in solido, alimony in futuro, and transitional alimony. To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically

education, the earning capacity of that spouse can be increased. In our consideration of this issue, we are mindful of the instruction in *Gonsewski v. Gonsewski*:

> The statutory framework for spousal support reflects a legislative preference favoring short-term spousal support over long-term spousal support, with the aim being to rehabilitate a spouse who is economically disadvantaged relative to the other spouse and achieve self-sufficiency where possible. *See* Tenn. Code Ann § 36-5-121(d)(2)–(3); *Bratton,* 136 S.W.3d at 605; *Perry v. Perry,* 114 S.W.3d 465, 467 (Tenn. 2003). Thus, there is a statutory bias toward awarding transitional or rehabilitative alimony over alimony in solido or in futuro. While this statutory preference does not entirely displace long-term spousal support, alimony in futuro should be awarded only when the court finds that economic rehabilitation is not feasible and long-term support is necessary. *See Bratton,* 136 S.W.3d at 605; *Robertson,* 76 S.W.3d at 341–42.

350 S.W.3d 99, 109 (Tenn. 2011).

The findings quoted above address the factors at Tenn. Code Ann. § 36-5-121(i) governing the propriety of an award of alimony; the court did not make specific factual findings relative to its conclusion that Wife was not capable of rehabilitation. Where the court has not made findings, we review the record and determine where the preponderance of the evidence lies. *See Brooks v. Brooks*, 992 S.W.2d 405, 405 (Tenn. 1999); *Devorak v. Patterson,* 907 S.W.2d 815, 818 (Tenn. Ct. App. 1995); *Goodman v. Memphis Park Comm'n,* 851 S.W.2d 165, 166 (Tenn. Ct. App. 1992); *Kelly v. Kelly,* 679 S.W.2d 458, 460 (Tenn. Ct. App. 1984).

Wife testified that she had a degree in public management; that her degree qualified her for several non-specialized government jobs; that she had not made any effort to utilize her degree; that she possessed skills in "Excel [and] Word"; that she had experience as a

---

disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Evidence in the record as to the parties' standard of living consisted primarily of the marital property, bank and retirement accounts accumulated during the marriage, and the absence of debt other than the mortgage on the marital home; neither party contests the division of marital property. Wife does not contend that the amount of alimony awarded is inadequate because it will not allow her to achieve a particular post-divorce standard of living; rather, she asserts that the amount is inadequate because her monthly expenses exceed the award.

probation officer and in "financial aid procedures"; and that she had no physical limitations. Wife also testified that she "loved numbers" and had investigated a two-year accounting certificate program offered at Lipscomb University, costing "$16,000 to $18,000" and that with the certificate her income could rise from $39,000 per year to "about 45 or 50." This testimony supports a determination that Wife can be rehabilitated and achieve a higher income in the future, and that the long-term support as ordered by the court may not be necessary.[5] *See Gonsewski*, *supra*.

Because the evidence preponderates against the court's finding, we reverse the award of alimony *in futuro*. For the same reasons, the evidence supports an award of rehabilitative alimony; accordingly, we remand the case for a determination of the duration and amount of the award.

We are mindful of Wife's need for support during the period of rehabilitation. Wife testified–and the court found–that she was in need of support and husband had the ability to pay; the court, however, did not make findings relative to the $2,000 per month awarded. Wife contends that the amount awarded is insufficient and that the evidence "clearly showed Wife had a need for $2,400 per month and Husband had the ability to pay $2,400 per month." We agree that the evidence supports Wife's need for support and Husband's ability to pay support in addition to the cost of rehabilitation. Thus, in making the award, the court should consider the effect of our reversal of the award of alimony *in futuro* on Wife's need for support.[6] Further, pursuant to Tenn. Code Ann. § 36-5-121(e)(2), the trial court retains authority to modify the award if there is a material change in Wife's prospects for rehabilitation such that the court determines that rehabilitation is not feasible and an award alimony *in futuro* is appropriate. *See Crabtree v. Crabtree*, 16 S.W.3d 356 (Tenn. 2000).

Husband also contends that the court erred in finding that he had the ability to increase his earning capacity. He does not state how the court's ruling prejudiced his cause or influenced the award of alimony, and has otherwise failed to show that the court's ruling

---

[5] We note also that Wife testified that she was asking the court to consider her request to continue her education "as an option."

[6] In *Crabtree v. Crabtree*, 16 S.W. 3d 356 (Tenn. 2000), our Supreme Court considered a case in which the trial court had awarded a party rehabilitative alimony of $1,700 per month for a period five years followed by an award of alimony *in futuro* of $1,200 per month. The Supreme Court held that the concurrent awards of alimony *in futuro* and rehabilitative alimony were inconsistent, reversed the *in futuro* award and affirmed the award of rehabilitative alimony. *Id.* at 360-61. In recognition of the fact that the reversal of the *in futuro* award "eliminated the income stream that the trial court found was needed by [the spouse receiving alimony]," the court increased the amount of rehabilitative alimony to $2,500 per month. *Id.* at 361.

7

involved a substantial right that affected its judgment or resulted in prejudice to the judicial process. *See* Tenn. R. App. 36(b). We have modified the award of alimony commensurate with the evidence in the record and argument.

## II. ATTORNEY FEES AND DESIGNATION OF CUSTODIAN OF COLLEGE ACCOUNT

### A. Attorney Fees

In the final decree, the court found that "each party has the ability to pay his or her own attorney's fees" and declined to award fees. Wife contends that she should have been awarded fees because she did not have "funds to pay her legal expenses" and that paying the expenses would require her to deplete the assets she was awarded.[7]

An award of attorney fees in a divorce case constitutes alimony *in solido* and the decision of whether or not to award attorney fees is within the sound discretion of the trial court. *Gonsewski,* 350 S.W.3d at 113; Tenn. Code Ann. § 36-5-121(h)(1) ("alimony *in solido* may include attorney fees, where appropriate."). In determining whether to award attorney fees, the trial court should consider all the relevant statutory factors, including the relative fault of the parties. *Yount v. Yount,* 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002) (citing *Lindsey v. Lindsey,* 976 S.W.2d 175 (Tenn. Ct. App. 1997)). An award is considered most appropriate where the final decree of divorce does not provide the obligee spouse with a source of funds, such as from property division or alimony *in solido*, with which to pay his or her attorney. *Id*. (citing *Houghland v. Houghland,* 844 S.W.2d 619 (Tenn. Ct. App. 1992)). We will not disturb the decision on appeal unless that discretion has been abused. *Id.*

The court applied the statutory factors when it divided the marital property, which resulted in Wife receiving, *inter alia*, a retirement account with a value of $305,000, one-half of Husband's two pension funds; the court also awarded Wife $35,000 in alimony *in solido*. On the record presented, we cannot conclude that the court abused its discretion.

### B. Designation of Custodian of College Account

---

[7] Wife argues that the trial court "applied an incorrect theory of law when it ruled 'the only reason that the court would consider requiring the husband to pay the wife's attorney fee is through fault.'" We do not agree that the statement was a ruling. Prior to making the statement, the court held that "both parties have received a significant . . . amount of marital assets," and that "Both parties are in a position to pay their own attorney's fees." Taken in context, the statement is not a ruling and does not show that the court applied an incorrect legal theory.

The parties maintain a college account for their son, of which Husband is custodian; Wife contends that the court erred in not naming her as custodian of the account.

In the final decree the court stated the following with reference to the account:

15. Too much paperwork is required to transfer a college account from Husband's name to Wife's name, so the account shall remain in Husband's name, but on January 1 of each year Husband shall provide to Wife year-end statements showing the balance on all college accounts and an accounting of all expenditures. Since the account is a college fund provided by the paternal grandparents, it is appropriate to leave it in Husband's name.

There was very little proof as to the nature of the account; neither party included the account as a marital asset and Wife does not contend that the account should have been divided as a marital asset. Notwithstanding, in the absence of further proof relative to the account and inasmuch as it is maintained for the use and benefit of the parties' child, we believe it is appropriate to review the court's resolution of Wife's request under the standard we apply to the division of marital property. Under this standard, we accord trial courts wide latitude, *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983), and give great weight to the trial court's decision. *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996). Thus, we defer to the trial court unless the decision is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c)[8] or is not supported by a preponderance of the evidence. *Brown v.*

---

[8] Tenn. Code Ann. § 36-4-121(c) states:

(c) In making equitable division of marital property, the court shall consider all relevant factors including:
(1) The duration of the marriage;
(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
(4) The relative ability of each party for future acquisitions of capital assets and income;
(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.
(6) The value of the separate property of each party;

9

*Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994). Because the parties agree that the account is solely for their son's college education, we do not consider the factors at Tenn. Code Ann. § 36-4-121(c) particularly helpful in addressing this issue.

Wife argues that evidence of "previous disagreements regarding family or their son's expenses" and "Husband's failure to reimburse Wife for certain family or their son's expenses" support her contention that the court erred in not naming her as custodian of the account.

At the time of trial in July of 2013, the parties' son was preparing to enter the University of Tennessee; there was no testimony that the account would not be used, as necessary and in accordance with the terms applicable to the account, to fund his education. Further, Wife did not identify or testify as to any particular concern relative to Husband's management of the account. Although Wife is concerned with Husband's willingness to pay for the college expenses, the record does not preponderate against the court's ruling.[9]

---

(7) The estate of each party at the time of the marriage;
(8) The economic circumstances of each party at the time the division of property is to become effective;
(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
(10) The amount of social security benefits available to each spouse; and
(11) Such other factors as are necessary to consider the equities between the parties.

[9] Citing Husband's testimony that "she can have the entire college account," Wife also contends that Husband agreed that she could be custodian of the account. The testimony cited by Wife occurred at the end of Husband's cross-examination, when he was being questioned regarding various bills which Wife contended he had not paid; the examination concluded as follows:

Q. Are you opposed to Missus' name being on the college account?
A. She can have the entire college account.
Q. You're suggesting that her name be substituted as custodian for your name.
A. It's fine with me.

Considered in context, we do not consider this proof of Husband's agreement to have Wife named as custodian of the account. To the extent there is such an agreement, the parties are free to implement it directly with the holder of the account.

10

## CONCLUSION

For the foregoing reasons, the award of alimony *in futuro* is reversed and the case remanded for proceedings in accordance with this opinion; in all other respects, the judgment is affirmed.

_____
RICHARD H. DINKINS, JUDGE