IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT NASHVILLE
_____

**CAROL ANN LINDSEY,**

    Plaintiff-Appellee,

                                       Sumner Circuit No. 15155-C

Vs.                                     C.A. No. 01A01-9702-CV-00079

**WILLIAM HENRY LINDSEY,**

    Defendant-Appellant.

FROM THE SUMNER COUNTY CIRCUIT COURT
THE HONORABLE THOMAS GOODALL, JUDGE

Michael W. Edwards of Hendersonville
For Appellee

Dennis W. Powers; McClellan, Powers, Ehmling & Dix, P.C. of Gallatin
For Appellant

*AFFIRMED AND REMANDED*

Opinion filed:

**FILED**

**August 27, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

**DAVID R. FARMER, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

This is an appeal from a Final Decree of Divorce entered October 3, 1996. Defendant, William Henry Lindsey (Husband), appeals from the judgment of the trial court awarding alimony *in solido* and attorney's fees to plaintiff, Carol Ann Lindsey (Wife).

The parties were married on April 5, 1974. One child was born to the marriage on November 27, 1976, but she is no longer a minor. The daughter currently lives with Wife in a rented two-bedroom apartment in Portland, Tennessee. Wife does not receive any financial help from the daughter for the apartment.

At the time of the hearing, Wife was forty-one years old. Wife is employed by United Structures of America and has been for eleven years. She also has a part-time job at National Catalog and does catering. Her net take-home pay is $2,263.37 per month. Wife has a 401k through United Structures worth $4,641.95.

Husband was forty-three years old at the time of the hearing. Husband is employed at Golden Rod Dairies and his weekly take-home pay is $443.96. Husband is also provided with a company vehicle, but must pay personal miles each quarter of approximately $100.00. Husband has a retirement plan through Golden Rod, including a certificate of deposit worth $2,000.00. He also has an individual retirement account through Farmers Bank worth $2,000.00.[1]

The parties own rental property in Portland, Tennessee. The fair market value of the rental property is approximately $65,000.00,[2] and the property has an outstanding mortgage balance of $10,332.00 that will be paid off in two and one-half years. There are three units in the building, and the total rent received each month is $500.00. One of the units in the rental property is rented to Wife's mother and father, and the other two are rented to Wife's brother and his family. The parties receive $200.00 per month from Wife's parents and $300.00 per month from Wife's brother as rent. However, the fair market rental on the property is approximately $650.00 per month.[3]

The parties also have a 50% interest in a mini-storage building in Portland. The mini-storage is worth $187,500.00, with a mortgage balance of approximately $70,000.00. Husband's

---

[1] Husband admitted at trial that his and Wife's retirement benefits were approximately equal.

[2] Husband testified that the rental property was worth $75,000.00.

[3] In her deposition, Wife stated that the apartments could possibly be rented for between $900.00 and $1,200.00 per month.

mother lent additional money to Husband and his brother for the mini-storage building. The debt to Husband's mother has a current balance of $19,551.56. Wife knew that Husband borrowed some money from his parents, but did not know the amount. Husband also owes his brother $12,000.00 for the parties' one-half interest in the mini-storage property.

The parties lived in a house in Portland for eleven years. Husband's mother inherited the house from Husband's grandmother, so the parties never paid rent or a mortgage payment. The parties only had to pay the taxes and the utilities. The parties made improvements to the house totaling between $5,000.00 and $6,000.00. At the time of the hearing, the value of the home was approximately $80,000.00. When Husband's mother inherited the house, it was worth $45,700.00.[4]

Wife drives a 1987 Grand Fury automobile that is worth $1,500.00. The car has more than 100,000 miles on the odometer. Husband normally drives his company truck, but he also drives the parties' 1994 Mustang that is worth approximately $6,000.00.

The parties maintained separate accounts at Farmers Bank. At the time of the hearing, Wife had approximately $250.00 in her account. During discovery, Husband's bank account held $4,078.00, but at the time of the divorce hearing, Husband testified that the account held only $2,500.00. The parties also had various marital debt including debt with Capitol One Visa, Farmers Bank, and the Internal Revenue Service. Neither of the parties had any substantial assets before the marriage.

Husband was unfaithful during the marriage, which led Wife to file for divorce. Wife told Husband that she had an affair in 1975, but later stated that it was not true and that she only told him that to make him jealous.[5]

On February 13, 1996, Wife filed a complaint for absolute divorce against Husband in which she alleges irreconcilable differences. On May 10, 1996, Wife filed an amended complaint adding the allegation that Husband was guilty of inappropriate marital conduct. On April 12, 1996, Husband filed an answer to both complaints that admits irreconcilable differences, but denies that he is guilty of inappropriate marital conduct. After a bench trial on September 25, 1996, the trial court entered a final decree of divorce on October 3, 1996. In the

---

[4] The real estate was valued at $45,700.00 in Husband's grandmother's last will and testament.

[5] We note that Wife testified that it did not work, as such tactics rarely do.

decree, the trial court awarded Wife an absolute divorce on the grounds of inappropriate marital conduct.

The trial court awarded the rental property in Portland, Tennessee to Wife and ordered her to assume the mortgage. The trial court found that the rental property was worth $65,000.00 with a mortgage in the amount of $10,322.00 for a net equity of $54,668.00. The trial court awarded the mini-storage building to Husband and ordered him to assume the encumbrance. The trial court found that the mini-storage was worth $187,500.00 with an encumbrance of $70,000.00. Husband's net equity in the mini-storage was $58,750.00 at the time of the trial court's decision.

The trial court awarded Husband's retirement plan through Golden Rod Dairies and the individual retirement account with Farmers Bank to Husband, and the trial court awarded Wife's 401k with United Structures of America to Wife. The court found these awards to be substantially equal to each other. The trial court divided the remaining marital property, including the marital debt, and awarded $25,000.00 as alimony *in solido*, $995.50 in discretionary costs, and $4,380.00 in attorney's fees to Wife.

Husband appeals the judgment of the trial court and presents two issues for review: 1) whether the trial court erred in awarding Wife $25,000.00 as alimony *in solido*, and 2) whether the trial court erred in awarding Wife her attorney's fees of $4,380.00 as alimony *in solido*. Wife presents an additional issue: whether this Court should consider an additional award of attorney's fees to defray Wife's legal expenses incurred on appeal.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

In his first issue, Husband argues that the trial court abused its discretion in awarding $25,000.00 to Wife as alimony *in solido*. In the final decree of divorce, the trial court stated:

> The Court finds that through the Wife's efforts, she has contributed to the appreciation in value of over thirteen thousand three hundred seventeen and 00/100 dollars ($13,317.00). In order to adjust the inequities of the marital estate between the parties, the Court finds that the Husband's separate estate would include this house [the residence] and hereby awards to the Wife as alimony in solido . . . the sum of twenty-five thousand and 00/100 ($25,000.00). The Court considers the Wife's contribution to the appreciation in value of the mini storage

buildings and the fact that these buildings were awarded to the Husband and will continue to appreciate in value and generate income, as well as the fact that the Wife will need to secure dependable transportation due to the fact her motor vehicle has over one hundred thousand (100,000) miles and the Husband's motor vehicle has fifty thousand (50,000.00) miles.

Trial courts have broad discretion in dividing the marital estate upon divorce. *Loyd v. Loyd*, 860 S.W.2d 409, 411 (Tenn. App. 1993); *Lancaster v. Lancaster*, 671 S.W.2d 501, 502 (Tenn. App. 1984).

T.C.A. § 36-5-101(d)(1) provides:

> It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

> (C) The duration of the marriage;

> (D) The age and mental condition of each party;

> (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

> (F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

> (G) The separate assets of each party, both real and personal, tangible and intangible;

> (H) The provisions made with regard to the marital property as defined in § 36-4-121;

> (I) The standard of living the parties established during the

5

marriage;

> (J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

> (K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

> (L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

T.C.A. § 36-5-101(d)(1) (1994).

Need and the ability to pay are the critical factors in setting the amount of an alimony award. *Smith v. Smith*, 912 S.W.2d 155, 159 (Tenn. App. 1995); *Lancaster*, 671 S.W.2d at 503. In *Lancaster*, this Court stated:

> Alimony is not and never has been intended by our legislature to be punitive. *See McClung v. McClung*, 29 Tenn. App. 580, 198 S.W.2d 820, 822 (1947). Nor do we believe it was intended simply as an award for virtue. It is not designed to serve as an annuity for the wife; or as Professor Clark has stated "[t]he purpose of alimony is to care for the wife's needs after divorce, not to provide her with a life-time profit-sharing plan." H. Clark, *Law of Domestic Relations* § 14.9(4) (1968).

*Lancaster*, 671 S.W.2d at 503. The propriety of awarding alimony as well as the adequacy of the amount awarded depends upon the unique facts of each case. *Butler v. Butler*, 680 S.W.2d 467, 470 (Tenn. App. 1984). The amount of alimony to be awarded is a matter for the trial court's discretion in view of the particular circumstances of the case, and the appellate courts are not inclined to alter the awards except where the record reflects that such discretion has been abused. *Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. App. 1988).

Husband argues that the trial court abused its discretion in awarding Wife alimony *in solido* because she did not substantially contribute to the appreciation in value of the residence or the mini-storage property.

The undisputed evidence shows that the parties contributed $5,000.00 to $6,000.00 to the upkeep of the residence and that Wife helped in the home's maintenance. The record shows that Wife did contribute to the appreciation in value of the residence.

The trial court found that the house had a fair market value of $66,683.85 at the time of the inheritance and a value of $80,000.00 at the time of the divorce. Therefore, the trial court found that the appreciation in value over the course of the marriage was $13,317.00. However,

6

the record shows that the house had a fair market value of $45,700.00 at the time of the inheritance.[6] The actual appreciation in value during the marriage was therefore $34,300.00. Thus, the amount of the appreciation was even greater than the amount that the trial court considered in rendering its decision.

Wife testified that she worked for the mini-storage business by keeping the books, writing checks, and making deposits. The business was also able to build the mini-storage buildings for less money because Wife used her discount with United Structures to purchase pre-engineered metal buildings. The record does not indicate how much the mini-storage property appreciated in value, nonetheless, the evidence shows that Wife contributed to the mini-storage business.

Husband also argues that the trial court abused its discretion in awarding the alimony *in solido* because the residence is not part of his separate estate. We agree that the record shows that the residence is owned by Husband's mother and is not a part of his separate estate. Nonetheless, we believe that the trial court could have considered the fact that Husband may continue to live there rent free and might be able to experience the benefits of the appreciation,[7] while Wife is forced to rent a two-bedroom apartment for her and the parties' daughter. This fact goes directly to the needs of the parties and Husband's ability to pay.

Husband next argues that Wife did not demonstrate the need for the award of the alimony *in solido*. Wife testified that she could "meet [her] monthly bills, yes, but it's on a very tight budget." Wife works three jobs to make ends meet on her "tight budget." The evidence shows that Wife has $250.00 in the bank and that her car needs to be replaced. Husband argues that Wife does not need the award because she owns an income producing property, but is not charging the fair market rental. He also points out that the mortgage balance will be eliminated in two and one-half years. Wife could make a few hundred dollars more a month on the rent and, in two and one-half years, will have a greater cash flow. However, this does not substantially affect her need for assistance or support now.

We believe that Wife demonstrated a need for an award of alimony. In addition, without

---

[6] It appears that the trial court misread Husband's grandmother's last will and testament. The last will and testament lists the value of her real estate as $45,700.00 and the value of her personal property as $66,683.85.

[7] There was no testimony that Husband would eventually inherit the house or would actually share in the appreciation.

the alimony *in solido*, Husband was awarded more of the marital assets than Wife. Husband's infidelity precipitated this divorce, and we believe that he should not be placed in a better position than Wife following the division of the marital assets.

Finally, Husband argues that there is no proof that he has the ability to pay the award. However, the evidence shows that Husband's bank account held $2,500.00 and that he operated on a cash basis. Husband would deposit his paycheck, keep some cash, and then pay bills and live on cash payments only. Husband did not provide an accounting of his expenses, but it appears that Husband meets his cash flow needs. In addition, Husband is provided a company truck and lives rent-free in his mother's home. Husband argues that the trial court did not consider his debt to his parents on the mini-storage building. We note that the proof was not clear that the debt was for the mini-storage building or was even really a debt.[8] In addition, the trial court did not consider that the mini-storage was income-producing property. Although Husband also operates on a tight budget, we believe that he has the ability to pay the award. We hold that the trial court did not abuse its discretion in ordering Husband to pay $25,000.00 in alimony *in solido* to Wife.

In his second issue, Husband argues that the trial court abused its discretion by awarding Wife $4,380.00 in attorney's fees. In determining whether to award attorney's fees, the trial court should again consider the relevant factors in T.C.A. § 36-5-101(d)(1). ***Kincaid v. Kincaid***, 912 S.W.2d 140, 144 (Tenn. App. 1995). When the wife demonstrates that she is financially unable to afford counsel, and when the husband has the ability to pay, the court may properly order the husband to pay the wife's attorney fees. ***Id***. An award of attorney's fees is within the sound discretion of the trial court, and unless the evidence preponderates against the award, it will not be disturbed on appeal. ***Id***. A spouse with adequate property and income is not entitled to an award of additional alimony to compensate for attorney's fees and expenses. ***See Duncan v. Duncan***, 686 S.W.2d 568 (Tenn. App. 1984).

As noted above, Wife does not have adequate property and income to pay her attorney's fees. The trial court could consider the factors in T.C.A. § 36-5-101(d)(1), including the relative fault of the parties. Husband's actions started the divorce proceedings, and we believe that the trial court did not abuse its discretion by ordering Husband to pay Wife's attorney's fees in those

---

[8] The proof showed that Husband and his brother paid their parents some interest, but did not have a written agreement, a payment schedule, or a deadline. Additionally, the proof was not clear that Husband was individually liable on the debt.

proceedings. Considering all of the circumstances, Husband should be required to pay Wife's attorney's fees.

Wife, in her only issue, asks this Court to award her legal expenses for defending this appeal. Considering the division of marital property and the respective income of the parties, we believe it is appropriate for the parties to pay their own attorney fees incurred on appeal.

The judgment of the trial court is affirmed. This case is remanded to the trial court for such further proceedings as may be necessary. Costs of this appeal are assessed against the appellant.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**DAVID R. FARMER, JUDGE**

_____
**HOLLY KIRBY LILLARD, JUDGE**