
# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 25, 2017 Session

## PHILLIP JAY SEIFERT v. MARIA COVENY SEIFERT

**Appeal from the Chancery Court for Knox County**
**No. 186118-3     Michael W. Moyers, Chancellor**

_____

### No. E2016-01340-COA-R3-CV

_____

The principal issues in this divorce action arise from the parties' antenuptial agreement. The trial court declared the parties divorced, classified the bulk of the assets as Husband's separate property, divided the modest amount of assets that were classified as marital property, and awarded Wife alimony *in futuro* of $8,000 per month and alimony *in solido* of $500,000. Both parties appeal. Wife contends the court erred in classifying the bulk of the assets as Husband's separate property and that the alimony awarded to her is insufficient. She also requests an award of attorney fees incurred on appeal. Husband contends that all of the income he earned during the marriage is his separate property, that all assets he acquired with that income is his separate property, and that the antenuptial agreement prohibited the trial court from considering the value of his separate property in awarding alimony to Wife. We affirm the trial court in all respects. We also find that Wife is entitled to recover reasonable and necessary attorney fees incurred on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Ronald J. Attanasio, Knoxville, Tennessee, for the appellant, Phillip Jay Seifert.

L. Caesar Stair, III and C. Scott Taylor, Knoxville, Tennessee, for the appellee, Maria Coveny Seifert.

## OPINION

Phillip Jay Seifert ("Husband") and Maria Coveny Seifert ("Wife") married in August 1997. A few days prior to the marriage, the parties entered into an agreement designed to handle the disposition of the parties' property in the event of divorce ("Antenuptial Agreement" or "Agreement").

At the time of the marriage, Husband was in his early thirties and Wife was in her early forties. Husband had an established medical practice as an emergency room physician, and Wife, who held an associate's degree, had established her career as a registered nurse. Husband continued to work as an emergency room physician throughout the marriage and earned an annual income ranging from $350,000 to $550,000 (approximately $29,166 to $45,833 per month). Wife worked as a registered nurse until sometime in 2000 or 2001, at which time she became a homemaker and the primary caretaker of the parties' children, born in 1997 and 1999.

After nearly sixteen years of marriage, Husband filed for divorce. In his complaint, Husband sought a divorce, to be named the primary residential parent of their two minor children, and an equitable division of the marital property in the event that the parties did not enter into a Marital Dissolution Agreement. Husband filed an amended complaint requesting enforcement of the Antenuptial Agreement in the event that the parties did not enter into a Marital Dissolution Agreement. Wife filed an answer and counter-complaint for divorce challenging the validity and enforceability of the Agreement. Wife also sought to be designated primary residential parent of the children, alimony, an equitable division of the marital estate, and payment of her attorney fees and litigation expenses.

The trial court held a bifurcated hearing on the issue of the validity and enforceability of the Antenuptial Agreement on July 29 and 30, 2015. Following the hearing, the trial court rendered its opinion finding the Agreement to be valid and enforceable. Neither party challenges this finding on appeal.

Almost a year later, the underlying divorce action was tried over two days in June 2016. At the conclusion of the trial, the court ordered the parties divorced pursuant to Tenn. Code Ann. § 36-4-129. When the divorce was granted, Wife was in her early sixties, Husband was in his early fifties, and both parties were in good health. Their oldest child had reached the age of majority, and their youngest child was seventeen years old.[1] In ruling from the bench, the trial court adopted Mother's proposed parenting plan verbatim, finding it to be in the child's best interest. The parenting plan, as adopted by the court, designated the primary residential parent as "Mother when the children are

---

[1] The youngest child turned eighteen in April 2017.

with her, and Father when the children are with him." The plan also provided equal parenting time and directed that major decisions regarding the child be made jointly.

In dividing the martial estate, the trial court first looked to the Antenuptial Agreement for guidance as to classification of the separate and marital property of the parties. The court determined that the language and intent of the agreement was to categorize all property acquired after marriage, including personal services income acquired after the marriage, as separate property, unless the property was acquired jointly or titled in both of their names. Based on its interpretation of the Antenuptial Agreement, the trial court found that Husband had a separate estate valued at approximately $3.5 to $4 million. Husband's separate assets included, *inter alia*, the marital residence, an Oppenheimer Retirement Fund, and an Oppenheimer investment account, all of which were acquired after the marriage with Husband's income and titled solely in Husband's name. The trial court found that Wife had a separate estate valued at approximately $54,352, which included, *inter alia*, her pension, jewelry, and household furnishings.

With respect to marital property, the trial court recognized that there was a "limited marital estate to be distributed because of the result of the prenuptial agreement[.]" In addition to disputed household furnishings and contents, the court found two marital assets to be divided: the parties' vacation home in Florida (equity valued at $200,000) and a stock account with Johnson Controls (valued at $64,029). The court awarded both marital assets to Husband but ordered him to pay Wife $100,000 as her share of the equity in the vacation home and to transfer one-half of the value of the stock to Wife as her share.

As for spousal support, the trial court found that its ability to assess alimony or support was not limited in any way by the Antenuptial Agreement. After considering the relevant statutory factors, the trial court awarded Wife alimony *in futuro* of $8,000 per month and alimony *in solido* of $500,000. In issuing its award of alimony, the trial court found that Wife was not capable of rehabilitation, considering, *inter alia*, the fact that she "became a homemaker" and "did not have the opportunity to acquire the sorts of assets that [Husband] did during the life of the marriage," and "even had she worked, at the very best her income would have been . . . a tint [sic: tenth] of what [Husband] makes." The trial court stated that its alimony award would allow Wife to purchase a home and live comfortably for the remainder of her life. Moreover, in response to a request for a separate hearing on attorney fees, the court stated that it intended for its award of alimony *in solido* "to cover [Wife's] attorneys fees along with her other debts," but that "she can do with it whatever she likes . . . ." Thus, the trial court stated that "there [wouldn't] be any necessity for a separate hearing on attorneys fees."

The Final Judgment for Divorce reflecting the trial court's decision and incorporating by reference the transcript of its ruling from the bench for its findings of fact and conclusions of law was entered on June 29, 2016. Thereafter, Husband filed a

Motion for Relief Pending Appeal requesting an order suspending the relief ordered by the trial court in the Final Judgment for Divorce. The trial court granted Husband's motion as to the award of alimony *in solido* of $500,000 and the division of the Johnson Controls stock, but it denied Husband's motion as to the award of alimony *in futuro* and the award of Wife's share of the equity in the vacation home. Husband timely perfected this appeal.

## STANDARD OF REVIEW

"In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01. If the trial court makes the required findings of fact, appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing Tenn. R. App. P. 13(d)). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Grp. Trust*, 209 S.W.3d 595, 598-99 (Tenn. Ct. App. 2006) (citations omitted).

> Requiring trial courts to make findings of fact and conclusions of law is generally viewed by courts as serving three purposes. First, findings and conclusions facilitate appellate review by affording a reviewing court a clear understanding of the basis of a trial court's decision. Second, findings and conclusions also serve "to make definite precisely what is being decided by the case in order to apply the doctrines of estoppel and res judicata in future cases and promote confidence in the trial judge's decision-making." A third function served by the requirement is "to evoke care on the part of the trial judge in ascertaining and applying the facts." Indeed, by clearly expressing the reasons for its decision, the trial court may well decrease the likelihood of an appeal.

*Lovlace v. Copley*, 418 S.W.3d 1, 34-35 (Tenn. 2013) (internal citations and footnotes omitted).

While there is no bright-line test by which to assess the sufficiency of the trial court's factual findings, the general rule is that "the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *Id.* at 35. "Simply stating the trial court's decision, without more, does not fulfill [the Rule 52.01] mandate." *Gooding v. Gooding*, 477 S.W.3d 774, 782 (Tenn. Ct. App. 2015) (quoting *Barnes v. Barnes*, No. M2011-01824-COA-R3-CV, 2012 WL 5266382, at *8 (Tenn. Ct. App. Oct. 24, 2012)).

If the trial court fails to explain the factual basis for its decisions, the appellate court "may conduct a de novo review of the record to determine where the preponderance of the evidence lies or remand the case with instructions to make the requisite findings of fact and conclusions of law and enter judgment accordingly." *Id.* at 783 (citing *Lovlace*, 418 S.W.3d at 36; *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997); *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005)).

Our review of a trial court's determinations on issues of law is de novo, without any presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

## ANALYSIS

Husband presents thirteen "issues" for our review, some of which are not appropriate for this court to consider in that they are argumentative and non-justiciable contentions. Therefore, we decline to track the issues as stated by Husband, and instead, we consolidate and restate the issues that are appropriate for our consideration as follows:

1) Whether the trial court divided the marital property, specifically the household furnishings and contents, in accordance with the Antenuptial Agreement.
2) Whether the trial court erred in interpreting the Antenuptial Agreement and, thus, erred in considering the separate property of Husband for purposes of determining an award of alimony.
3) Whether the trial court erred in its award of alimony to Wife.
4) Whether the trial court erred in its adoption of Wife's permanent parenting plan.
5) Whether Husband was entitled to a separate hearing on the attorney fees claimed by Wife.
6) Whether Husband was entitled to a stay of execution on Wife's award of alimony *in futuro*.

Wife presents three additional issues for our review. We restate Wife's issues as follows:

1) Whether the trial court erred in interpreting the Antenuptial Agreement and, thus, erred in classifying the separate and marital property of the parties.
2) Whether the trial court erred by failing to award Wife an additional amount of alimony *in solido* to cover her debts of approximately $126,180; her attorney fees as of April 22, 2016, in the amount of $83,085; and additional attorney fees incurred by Wife from April 22 to July 1, 2016.
3) Whether Wife is entitled to an award of attorney fees and litigation expenses on appeal.

For ease of analysis, we will address the issues in the following categories: (1) the disposition of property; (2) alimony; (3) the permanent parenting plan; and (4) other matters.

## I. DISPOSITION OF PROPERTY

Wife challenges the trial court's classification of the parties' separate and marital property, and Husband challenges the division of the household furnishings. The resolution of these issues is controlled by the parties' Antenuptial Agreement.

### A. Antenuptial Agreement

It is well-settled that parties may control the disposition of property upon divorce by way of a valid antenuptial agreement. Tenn. Code Ann. § 36-3-501 (2001); *Kahn v. Kahn*, 756 S.W.2d 685, 694 (Tenn. 1988). Antenuptial agreements are valid and enforceable in this state as long as they are entered into freely, knowingly, and without duress or undue influence. *Perkinson v. Perkinson*, 802 S.W.2d 600, 603 (Tenn. 1990). Where an antenuptial agreement is valid and enforceable, having been shown to meet the prerequisites, the terms of that agreement regarding distribution of property upon divorce will be applied instead of the statutory definitions of marital and separate property or general principles regarding an equitable distribution. *Id.* at 603-04.

A valid antenuptial agreement is the same as any other contract and should be interpreted using principles of construction that apply to other written agreements. *Wilson v. Moore*, 929 S.W.2d 367, 373 (Tenn. Ct. App. 1996). In construing a contract, courts should seek to identify the intent of the parties as set forth in the language of the contract. *City of Cookeville ex rel. Cookeville Reg'l Med. Ctr. v. Humphrey*, 126 S.W.3d 897, 904 (Tenn. 2004); *Wilson*, 929 S.W.2d at 373. Because antenuptial agreements are favored by public policy, they are construed liberally to give effect to the intention of the parties. *Sanders v. Sanders*, 288 S.W.2d 473, 477 (Tenn. Ct. App. 1955). In general, the provisions of a contract must be examined in the context of the entire agreement. *Wilson*, 929 S.W.2d at 373. Contractual terms should be given their plain, ordinary meaning and "should be construed harmoniously to give effect to all provisions and to avoid creating internal conflicts." *Id*. With respect to antenuptial agreements, the substance of the parties' intent will prevail over the form of the instrument, and the agreement "will not be held invalid for technical or trifling reasons." *Sanders*, 288 S.W.2d at 478.

The interpretation of a contract is a question of law. *Guiliano v. CLEO, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). Therefore, the trial court's interpretation of a contractual document is not entitled to a presumption of correctness on appeal. *Id*.; *Angus v. W. Heritage Ins. Co.*, 48 S.W.3d 728, 730 (Tenn. Ct. App. 2000). This court must review the documents ourselves and make our own determination regarding their meaning and legal import. *Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993).

Because the trial court's holding that the Antenuptial Agreement between the parties was enforceable has not been appealed, our task is to enforce the terms of the Agreement in light of the facts in the record. The provisions of the Antenuptial Agreement that are relevant to the issues raised on appeal read as follows:

[Seventh Recital] WHEREAS, each of the parties has been advised that any property he or she may own at the time of the marriage would constitute "separate property"; separate property is defined as property acquired before marriage or property acquired either before or after marriage by bequest, devise, descent, or gift from a party other than the spouse, compensation for personal injuries and property acquired in exchange for or the increase in value of separate property, except to the extent that such appreciation is due in part to the contributions or efforts of the other spouse or as the parties may agree in writing; and

[Eighth Recital] WHEREAS, each party desires to keep all of his or her separate property, whether now owned or hereafter acquired, including any property either now owned or acquired after the date of the marriage, in his or her own name or with any person, firm or corporation other than his or her spouse, regardless of whether said property would be deemed "marital property" pursuant to any law, from any claim of the other by virtue of the forthcoming marriage; and

[Ninth Recital] WHEREAS, each party desires to keep all of his or her separate property, whether now owned or hereafter acquired, including any property either now owned or acquired after the date of the marriage, in his or her own name or with any person, firm or corporation other than his or her spouse, regardless of whether said property would be deemed "marital property" pursuant to any law, from any claim of the other by virtue of the forthcoming marriage; . . .

. . . .

3. PROPERTY RIGHTS. The parties agree that after the marriage, in the event of a subsequent legal separation or divorce between the parties, the property presently owned by each of them shall be disposed of in accordance with the following provisions of this paragraph:

a. Any property presently owned by either of the parties shall be deemed his or her separate property. All separate property, as defined in this Agreement, shall be eliminated from consideration by the courts of this

or any other state or jurisdiction in the event of any divorce or other matrimonial action between the parties in the future.

. . . .

c. Any property acquired by either party after the date hereof shall be deemed separate property of the party acquiring same.

d. Any personal property acquired jointly or in both names after the date hereof shall be deemed marital property.

. . . .

j. In the event of a divorce, separation or annulment of the parties' marriage, there shall be no distribution of property other than property acquired after the date hereof by the parties as marital property; such marital property shall be equitably distributed as provided by agreement or by the order of a court of competent jurisdiction.

. . . .

5. MAINTENANCE. In the event the parties are divorced, separated or their marriage is annulled or in the event an action for such relief is brought by either party, the alimony or maintenance, whether temporary or permanent, shall be paid by such party and in such amounts as shall be reasonable, fair and equitable at the time, whether by agreement or by the judgment of a court of competent jurisdiction.

. . . .

In interpreting the Antenuptial Agreement, the trial court determined that the language and intent of the agreement was to separate all property acquired after marriage, with the exception of any property acquired jointly or titled in both of their names. The trial court further interpreted the Agreement to include personal services income of the parties as their separate property. Specifically, the court explained that "to the extent that [Husband] made money, that money would be his; to the extent that he converted it into investment instruments or physical, tangible property, it would be his; to the extent that [Wife] earned an income, it would be hers; to the extent she turned her income into tangible property, that would be hers."

Wife contends that the trial court erred in interpreting the Antenuptial Agreement so as to include personal services income acquired after the marriage as separate property rather than marital property. She argues that the parties did not intend for their income

acquired after the marriage to be included as the acquiring parties' separate property. According to Wife, in construing the Agreement, specifically the Eighth Recital with the operative provision of Section 3.c., it is clear and unambiguous that only property falling into the category of "separate property" as defined in the recitals would be deemed "separate property of the party acquiring same." Namely, property that is acquired "by bequest, devise, descent, or gift from a party other than the spouse, compensation for personal injuries and property acquired in exchange for or the increase in value of separate property, except to the extent that such appreciation is due in part to the contributions or efforts of the other spouse or as the parties may agree in writing." Thus, Wife contends that any property the parties acquired after the marriage by means of Husband's earned income should be classified as marital property.

This court addressed a similar issue regarding an antenuptial agreement and the classification of separate property in *Weingart v. Forester*, No. E2010-00895-COA-R3-CV, 2011 WL 1361583, at *4 (Tenn. Ct. App. Apr. 11, 2011). *Weingart* involved the classification of the wife's retirement fund. *Id.* As in the present case, the wife made substantial contributions to the fund with income she earned during the marriage. *Id.* The antenuptial agreement in *Weingart* provided, in pertinent part, as follows:

> 4. **Separate Property of the Parties.** The parties hereto agree that each party shall retain, free from any and all claims whatsoever kind or nature of the other party, as his/her separate estate, the following property, hereinafter collectively referred to as "Separate Property":
>
> (a) Any and all property, whether real, personal, or mixed, acquired by such party hereto by purchase, exchange, gift, bequest, devise or descent and/or with his or her Separate Property, as defined by this paragraph 5 of this Agreement; and
>
> (b) In addition and not in limitation of the terms of paragraph (a), all property set forth on Exhibit "A" attached hereto shall be the Separate Property of Weingart and all property set forth on Exhibit "B", attached hereto, shall be the Separate Property of Forester; and,
>
> (c) In addition and not in limitation of the terms of paragraphs (a) and (b), any and all appreciation in the value of Separate Property of such party as set forth on the respective exhibits attached hereto and as defined in this paragraph 4, whether by reason of interest earned on such Property, whether passive or otherwise, appreciation of the value of such Separate Property for whatever reason, and/or the sale of exchange or substitution of any kind/or all items of Separate Property.
>
> . . . .

- 9 -

5. **After Acquired Property.** The parties agree that during the period subsequent to the date of their marriage, all property, whether real, personal or mixed, acquired by them, shall be the Separate Property as defined in paragraph 4 hereof, of the party who received by gift, bequest, devise or descent such property and/or whose Separate Property was used to purchase or acquire such property, and/or whose labor or services resulted in the funds for the payment for, or acquisition of, such real, personal or mixed property, unless otherwise agreed to in writing by and between the parties. Notwithstanding any legal presumptions to the contrary, only property acquired and titled, in writing, whether or not required by applicable law, in the joint names of the parties as Tenants by the Entireties shall be defined as "After Acquired Property." . . . .

*Id.* at *3-4 (emphasis added).

The wife in *Weingart* insisted that the entirety of the retirement account was her separate property because a straightforward reading of the parties' antenuptial agreement established that all property acquired after the marriage was to remain separate property unless the property was jointly titled in both parties' names. *Id.* at *4. As in this case, the husband argued that the contributions the wife made to the retirement fund after the marriage should be classified as martial property because "employment income" was not included within the antenuptial agreement's definition of "Separate Property." *Id.* He insisted that the antenuptial agreement should not be interpreted so as to permit the wife to "funnel her employment income into her retirement account thereby creating separate property that would otherwise constitute marital property." *Id.*

The trial court found that income was not specifically addressed in the antenuptial agreement but that it was "very clear that both parties were to retain her and his separate retirement benefits as their separate property under that agreement." *Id.* Thus, the trial court found that the retirement account was entirely the wife's separate property. *Id.* at *2.

On appeal, the *Weingart* court first noted that the antenuptial agreement failed to include a definition for the term "property," and observed that the plain meaning of the word property would apply. *Id.* at *4. Applying the plain and ordinary meaning of the term, the court concluded that "the parties intended that 'all property' to encompass property of any sort, including earnings from employment, retirement or elsewhere." *Id.* at *4, n.3 (citing *Reed v. Reed*, No. M2003-02428-COA-R3-CV, 2004 WL 3044904, at *5, n.1 (Tenn. Ct. App. Dec. 30, 2004)). In arriving at this conclusion, the court relied on the reasoning in *Reed v. Reed*, which reads:

- 10 -

The agreement did not define the term "property." Therefore, as there is no limiting definition for the term, we will look to the plain meaning of the term "property." *Planters Gin Co. v. Federal Compress and Warehouse Co.*, 78 S.W.3d 885, 889-90 (Tenn. 2002). Black's Law Dictionary defines "property" broadly as "[a]ny external thing over which the rights of possession, use, and enjoyment are exercised." Black's Law Dictionary 1232 (7th ed. 1999). Thus, we conclude that the parties intended that "all property" should be interpreted to encompass property of any sort, including earnings from employment, retirement or elsewhere.

*Reed*, 2004 WL 3044904, at *5, n.1.

Having determined that income was intended to be included as property, the court held:

After reading the Prenuptial Agreement and reviewing the record, we find that the Agreement's language is clear and unambiguous. The Agreement outlines that the parties intended to maintain their own separate property throughout the marriage unless they agreed to specifically designate property as "After Acquired Property" or marital property in writing. We further find that Wife's income is included in the definition of "Separate Property." Exhibit "A" that was attached to the Prenuptial Agreement lists Wife's income as her separate property. Under the provisions of the Agreement, Wife would maintain her separate property throughout the duration of the marriage including her employment income. *The trial court erred in finding that Wife's income was not covered by the Agreement and deeming it ambiguous. Therefore, we reverse the trial court's finding in that regard.* Nevertheless, in spite of finding the Agreement to be ambiguous, the trial court properly awarded Wife's retirement accounts to her. As the trial court noted, the Agreement provides that the parties would retain their respective retirement accounts. Husband's contentions that Wife's contributions to her retirement account constitute martial property cannot prevail over a straightforward reading of the Prenuptial Agreement. Accordingly, we affirm the trial court's award of Wife's retirement accounts as her separate property.

*Weingart*, 2011 WL 1361583, at *5 (emphasis added).

Turning to the antenuptial agreement at issue before us, as in *Weingart* and *Reed*, the Agreement fails to provide a definition for the term "property." Thus, applying the plain and ordinary meaning of the term "property," we must conclude that the parties intended for "any property" to encompass property of any sort, including earnings from employment, retirement, or elsewhere. *Weingart*, 2011 WL 1361583, at *4, n.3; *Reed*,

2004 WL 3044904, at *5, n.1. Admittedly, the Eighth Recital of the Antenuptial Agreement, if read in isolation, could be viewed as precluding any property acquired by means other than those stated from being classified as separate property; however, contract provisions are not read in isolation. Rather, courts must construe contracts as a whole and ascertain the parties' intent from the "'usual, natural, and ordinary meaning of the contractual language.'" *Guiliano*, 995 S.W.2d at 95. All provisions of a contract "should be construed in harmony with each other, if possible, to promote consistency and to avoid repugnancy between the various provisions of a single contract." *Id.*

By construing the Antenuptial Agreement as a whole, there is a clear indication that all property acquired after the marriage was to remain separate property unless the property was acquired jointly or in both parties' names. Within the Seventh Recital, the parties state that it is their "desire to keep *all of his or her property*, respectively, *now owned or hereafter acquired*, free from any claim that the other might otherwise have by reason of the marriage . . . ." In Section 3, the parties agreed that *"[a]ny property acquired by either party after the date hereof shall be deemed separate property of the party acquiring same."* (Emphasis added).

The foregoing considered, we affirm the trial court's finding that personal services income acquired after the marriage was separate property rather than marital property.

## B. Classification of Property

Turning to the classification of assets the parties acquired after the marriage—specifically, the Oppenheimer investment accounts, other bank account, and the marital residence, Wife concedes that these assets, which total $3.1 million, were generated by Husband's income earned after the marriage and are titled solely in Husband's name. In light of our decisions regarding the Antenuptial Agreement and the evidence in the record, we conclude that the trial court appropriately classified these assets as Husband's separate property in accordance with the relevant provisions of the Antenuptial Agreement.

## C. Division of Household Furnishings

Husband contends the trial court failed to divide the household furnishings and contents in accordance with Section 3.h. of the Antenuptial Agreement, which reads, "Each party shall be entitled to one-half ownership of any gifts jointly received by the parties subsequent to their marriage, such as wedding gifts, anniversary gifts, etc. regardless of the source of such gifts."

As a preliminary matter, we note that Rule 7 of the Tennessee Rules of the Appellate Court requires that, in all cases in which a party takes issue with the classification and division of marital property, the party must include in its brief a chart

specifying the property values proposed by both parties, the value assigned by the trial court, and the party to whom the trial court awarded the property. Tenn. Ct. App. R. 7. Rule 7 also requires that "[e]ach entry in the table must include a citation to the record where each party's evidence regarding the classification or valuation of the property or debt can be found. . . ." *Id*. Compliance with Rule 7 is essential to aid this court in reviewing the trial court's decision when a party contends the division of marital property was inequitable. *See Forbess v. Forbess*, 370 S.W.3d 347, 355 (Tenn. Ct. App. 2011).

Husband's brief does not contain a table in compliance with Rule 7. In explaining his failure to comply with the rules of this court, Husband states that he "does not complain of the valuation or even the division per se of the marital property," and that "the proof or record regarding these issues is not complex or complicated."[2] He also contends that he "cited to the record, Trial Exhibit and the [Antenuptial Agreement] for ease in reference by this Honorable Court, which is the underlying and basic purpose of the Rule 7 Table, and he should not be prevented from addressing or considered to have waived that issue." We disagree.

When an appellant fails to provide this court with a table in compliance with Rule 7, the appellant waives all such issues relating to the rule's requirements. *Forbess*, 370 S.W.3d at 355. The reason for such a harsh result was explained in *Forbess*:

> [I]t is essential that the parties comply with Rule 7 in order to aid this Court in reviewing the trial court's decision. The table required by Rule 7, allows this Court to easily and correctly determine the valuation and distribution of the marital estate as ordered by the trial court. Further, the Rule 7 table, allows this Court to ascertain the contentions of each party as to the correct valuations and proper distribution, as well as the evidence in the record which the party believes supports its contention. Consequently, a table, in full compliance with Rule 7, is vital as this Court must consider the entire distribution of property in order to determine whether the trial court erred. Moreover, this Court is under no duty to minutely search the record for evidence that the trial court's valuations may be incorrect or that the distribution may be improper.

---

[2] Perhaps, Husband did not include a table because he placed no evidence in the record on the value of certain assets he now claims were not divided in accordance with the Antenuptial Agreement. *See Caldwell v. Caldwell*, No. M2007-01205-COA-R3-CV, 2008 WL 4613586, at *2 (Tenn. Ct. App. Oct. 13, 2008) ("It is the responsibility of the parties, not the court, to propose values to marital property."); *see also Harden v. Harden*, No. M2009-01302-COA-R3-CV, 2010 WL 2612688, at *8 (Tenn. Ct. App. June 30, 2010) (holding that "[t]he fact that the trial court did not assign values to all of the property does not prohibit [the appellant] from providing this Court with the value [the appellant] contends ought to be assigned and a citation to the record to support such an assertion.").

*Id.* (citations omitted) (quoting *Harden v. Harden*, No. M2009-01302-COA-R3-CV, 2010 WL 2612688, at *8 (Tenn. Ct. App. June 30, 2010)).

Because Husband failed to provide a Rule 7 chart, any issues related to the division of household furnishings are waived. *See* Tenn. R. App. P. 27(a)(4), (7); *see also Forbess*, 370 S.W.3d at 355.

## II. ALIMONY

We now turn to the issues concerning the trial court's award of alimony *in futuro* and alimony *in solido* in favor of Wife. Husband argues that the trial court erred by considering the separate property of the parties for purposes of determining an award of alimony. He also argues that the trial court abused its discretion in awarding wife $8,000 per month in alimony *in futuro* and $500,000 in alimony *in solido*. Specifically, he contends that Wife is underemployed and that she is capable of rehabilitation. For her part, Wife argues that the trial court's award of alimony *in solido* was insufficient and that it should have awarded her additional alimony *in solido* of at least $209,000.

We review an award of alimony under the abuse of discretion standard. *Herrera v. Herrera*, 944 S.W.2d 379, 388 (Tenn. Ct. App. 1996). Trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of support. *See Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App.1996). If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

When determining whether an award of alimony is appropriate, courts must consider the statutory factors in Tenn. Code Ann. § 36-5-121(i) of which we consider the need of the spouse seeking support and the ability of the other spouse to provide such support to be the most important. *Oakes v. Oakes*, 235 S.W.3d 152, 160 (Tenn. Ct. App. 2007). Alimony decisions require a careful consideration of the relevant factors in Tenn. Code Ann. § 36-5-121(i) and typically hinge on the unique facts and circumstances of the case. *Oakes*, 235 S.W3d at 160; *see also Anderton v. Anderton*, 988 S.W.2d 675, 683 (Tenn. Ct. App. 1998).

Once the trial court has determined that alimony is appropriate, it must determine the nature, amount, and period of time of the award. The court may award "rehabilitative alimony, alimony *in futuro*, also known as periodic alimony, transitional alimony, or alimony *in solido*, also known as lump sum alimony or a combination of these . . . ." Tenn. Code Ann. § 36-5-121(d)(1). The amount and type of alimony to be awarded is within the sound discretion of the trial court in light of the particular circumstances of

- 14 -

each case. *Riggs v. Riggs*, 250 S.W.3d 453, 456-57 (Tenn. Ct. App. 2007) (citing *Lindsey v. Lindsey*, 976 S.W.2d 175, 180 (Tenn. Ct. App. 1997)). The appellate courts will not alter such awards absent an abuse of discretion. *Id.*

### A. Consideration of Separate Property

Husband contends that the trial court erred by considering the parties' separate property when determining an award of alimony. He insists that the Antenuptial Agreement precluded the court's consideration of separate property. Specifically, Husband argues that, pursuant to Section 3(a) of the Agreement, the separate property of the parties "shall be eliminated from consideration by the courts . . . in the event of any divorce . . . ."

We begin by noting that, rather than limiting or waiving alimony, the Antenuptial Agreement expressly provided for an award of alimony in the event the marriage failed. Section 5 of the Agreement reveals the parties' intent as to an award of alimony in the event the marriage failed. That section reads in its entirety as follows:

> MAINTENANCE. In the event the parties are divorced, separated or their marriage is annulled or in the event an action for such relief is brought by either party, the alimony or maintenance, whether temporary or permanent, *shall be paid by such party and in such amounts as shall be reasonable, fair and equitable at the time, whether by agreement or by the judgment of a court of competent jurisdiction.*

(Emphasis added).

In Tennessee, for a "court of competent jurisdiction" to grant an award of alimony, the court is required to consider, *inter alia*, "[t]he separate assets of each party, both real and personal, tangible and intangible." *See* Tenn. Code Ann. § 36-5-121(i)(7). The language Husband principally relies upon to preclude the court from considering separate property for purposes of determining an award of alimony is found within the provisions concerning "property rights," not alimony. Section 3 and subsection (a) read:

> 3. Property Rights. *The parties agree* that after the marriage, in the event of a subsequent legal separation or divorce between the parties, *the property presently owned by each of them shall be disposed of in accordance with the following provisions of this paragraph:*
>
> a. Any property presently owned by either of the parties shall be deemed his or her separate property. All separate property, as defined by this Agreement, shall be eliminated from consideration by the courts of this

or any other state or jurisdiction in the event of any divorce or other matrimonial action between the parties in the future.

. . . .

(Emphasis added).

As noted earlier, all provisions of a contract "should be construed in harmony with each other, if possible, to promote consistency and to avoid repugnancy between the various provisions of a single contract." *Guiliano*, 995 S.W.2d at 95. In this case, the agreement specifically states that alimony "shall be paid . . . in such amounts as shall be reasonable, fair and equitable at the time, whether by agreement or by the judgment of a court of competent jurisdiction." Although the language in Section 3.a. evinces the parties' intent that their separate property not be considered for purposes of the court's division of property, we conclude that this language does not limit the court's ability to consider the separate property of the parties when assessing its award of alimony for Wife. Accordingly, we affirm the trial court's decision to consider Husband's separate property for purposes of determining a "reasonable, fair and equitable" award of alimony.

### B. Alimony *In Futuro*

Husband contends the trial court abused its discretion in awarding Wife alimony *in futuro* in the amount of $8,000 per month. In support of this contention, he insists that the trial court erred by failing to find Wife underemployed and capable of rehabilitation.

Our courts have discretion to award spousal support "according to the nature of the case and the circumstances of the parties." Tenn. Code Ann. § 36-5-121(a). Although there is a legislative preference for awarding rehabilitative alimony, an award of alimony *in futuro* is warranted when the court finds that "there is relative economic disadvantage and that rehabilitation is not feasible." Tenn. Code Ann. § 36-5-121(f)(1). Furthermore, alimony *in futuro* is appropriate when

> a disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse.

*Id*. When determining whether to award spousal support and the nature, amount, and duration of such support, courts consider several factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i). The two most important factors relating to a trial court's award of alimony are the need of the economically disadvantaged spouse and the obligor spouse's ability to pay. *See Watson v. Watson*, 309 S.W.3d 483, 497-98 (Tenn. Ct. App. 2009) (citation omitted).

In this case, the trial court found rehabilitation "not feasible" and, thus, awarded Wife alimony *in futuro* of $8,000 per month. In issuing its ruling from the bench, the trial court correctly considered the statutory factors applicable to alimony determinations and made the following findings regarding its award of alimony, which we summarize:

1. This is a long term marriage of nineteen years.
2. Wife is sixty years old and in good health. Husband, who is eight or nine years younger than Wife, is also in good health.
3. Husband has a separate estate that is worth somewhere between $3.5 and $4 million. Wife essentially has no marital estate at all apart from the distribution of marital assets.

- 17 -

4. Husband is an emergency room physician and stands to have a long-term ability to earn an income and presently earns an income that ranges from $350,000 to $550,000 a year.
5. Wife has an associate's degree and a certificate as a registered nurse. However, during most of the marriage, Wife served as the homemaker, the primary child caregiver, the driver, and organizer for the household. As a result, Wife did not have the opportunity to acquire the assets that Husband did during the life of the marriage. Moreover, if Wife had of worked during the marriage, her income, at the very best, would have been a tenth of what Husband makes; thus disallowing the possibility that she would acquire the sorts of assets that Husband acquired under this prenuptial agreement.
6. Wife recently reentered the marketplace, but she is not making much money.
7. According to the evidence presented, if Wife were working fulltime in her position as a registered nurse with an associate's degree, her annual income would max out somewhere between $50,000 and $60,000.
8. Given Wife's level of education and field of career, there is no reasonable opportunity for Wife to rehabilitate herself to the level of enjoying a lifestyle commensurate to the lifestyle she enjoyed during the marriage or one that is reasonably comparable to the lifestyle that Husband would expect to enjoy post-divorce.
9. Wife is saddled with a number of debts due to her long absence from the workplace and the protracted and extensive nature of this litigation. Considering her attorney's fees costs, loans from family, and credit card bills, Wife's debts total between $200,000 and $250,000.
10. Wife has no home, and she is driving a car that may or may not continue to function.

The evidence in this record does not preponderate against the findings of fact upon which the trial court based its alimony determination. Considering the profound discrepancy in the parties' respective earning capacities, Wife is clearly the disadvantaged spouse and is entitled to alimony. Moreover, given Wife's age and the length of time she remained out of the workforce while serving as homemaker and primary child caregiver, rehabilitation is not appropriate. Further, the parties maintained a very comfortable and luxurious standard of living during the marriage. The family traveled extensively in this country and abroad, and the children attended private school and specialty camps. Moreover, Husband's assets, income, and earning ability dwarf those of Wife and he has enjoyed a lavish lifestyle since 2012 as evidenced by the fact he paid at least $44,000 per year for personal training and he planned on taking the children on a two-week vacation to Hawaii at the conclusion of the trial.

There are no hard and fast rules for spousal support decisions, *see Anderton*, 988 S.W.2d at 682; *Crain v. Crain*, 925 S.W.2d 232, 233 (Tenn. Ct. App. 1996), and as we indicated earlier, the amount of alimony is within the sound discretion of the trial court in

light of the particular circumstances of each case. *Riggs*, 250 S.W.3d at 457 (citing *Lindsey*, 976 S.W.2d at 180). This court will not alter an award absent an abuse of discretion. *Id.* Considering the post-divorce standard of living of the two ex-spouses and other relevant facts, including specifically the financial needs of Wife and the ability of Husband to pay, we find no error with the trial court's decision to award Wife $8,000 per month as alimony *in futuro*.

## C. Alimony *In Solido*

Husband contends the award of alimony *in solido* in the amount of $500,000 is excessive. For her part, Wife contends the court should have awarded her additional alimony *in solido* in order to pay her debts of approximately $126,180, attorney fees of $83,085, plus additional attorney fees as of July 1, 2016.

In *Gonsewski v. Gonsewski*, 350 S.W.3d 99 (Tenn. 2011), the Tennessee Supreme Court explained that:

> [A]limony *in solido*, is also a form of long-term support. The total amount of alimony *in solido* is set on the date of the divorce decree and is either paid in a lump sum payment of cash or property, or paid in installments for a definite term. Tenn. Code Ann. § 36-5-121(h)(1); *Broadbent* [*v. Broadbent*], 211 S.W.3d [220,] 222 [(Tenn. 2006)] ("Alimony *in solido* consists of a definite sum of money that is paid in a lump sum or in installments over a definite period of time."). "A typical purpose of such an award would be to adjust the distribution of the parties' marital property." *Burlew*, 40 S.W.3d at 471. Alimony *in solido* "may be awarded in lieu of or in addition to any other alimony award, in order to provide support, including attorney fees, where appropriate." Tenn. Code Ann. § 36-5-121(d)(5). Unlike alimony *in futuro*, the other form of long-term support, alimony *in solido* is considered a final judgment, "not modifiable, except by agreement of the parties," and does not terminate upon the death or remarriage of the recipient or payor spouse. Tenn. Code Ann. § 36-5-121(h)(2)-(3); *see Riggs*, 250 S.W.3d at 456 n.3.

*Id.* at 108.

In issuing its award of alimony *in solido*, the trial court found Wife's request of $500,000 "reasonable" considering "her debts [were] somewhere between $200,000 and $250,000 . . . and she has no home." The trial court stated that its award of $500,000 would allow her to purchase a home, which the court further found would allow her to live comfortably for the remainder of her life. The court also stated that it intended for its award of alimony *in solido* "to cover [Wife's] attorneys fees along with her other debts,"

but that "she can do with it whatever she likes . . . ." Thus, the trial court stated that "there [wouldn't] be any necessity for a separate hearing on attorneys fees."

As we noted earlier, the trial court has broad discretion to determine the nature and amount of alimony, *see Garfinkel*, 945 S.W.2d at 748, and we will not reverse or modify the court's decision regarding spousal support unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes. *Broadbent*, 211 S.W.3d at 220. We have determined the trial court's decision to award Wife alimony *in solido* of $500,000 is consistent with public policy as reflected in the applicable statutes and it is supported by the evidence. Moreover, we find no abuse of discretion because the award is within the range of acceptable alternative dispositions. *See Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (holding that when reviewing a discretionary decision, the appellate court is to determine (1) whether the factual basis for the decision is supported by evidence, (2) whether the trial court properly identified and applied the appropriate legal principles, and (3) whether the decision was within the range of acceptable alternative dispositions). Accordingly, the award of $500,000 to Wife as alimony *in solido* is affirmed.

### III. PERMANENT PARENTING PLAN

We now turn to Husband's argument that the trial court erred in its adoption of Wife's permanent parenting plan.

Before addressing the substance of Husband's argument, we must again address his failure to comply with the rules governing appeals to this court. Tennessee Rule of Appellate Procedure 27(a)(7) states that the brief of the appellant shall contain an argument setting forth "the contentions of the appellant with respect to the issues presented . . . *including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record* (which may be quoted verbatim) relied on . . . ." (Emphasis added). The Rules of the Court of Appeals set forth the format and content of the written argument in regard to each issue on appeal. Rule 6(a) states that the argument for each issue shall contain:

1. A statement by the appellant of the alleged erroneous action of the trial court which raises the issue . . . with citation to the record where the erroneous or corrective action is recorded.

2. A statement showing how such alleged error was reasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.

3. A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.

4. A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found.

Tenn. Ct. App. R. 6(a). Rule 6(b) of the Rules of the Court of Appeals then provides that no complaint for reliance upon action by the trial court will be considered on appeal unless the argument thereon contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument upon such assertion contains a reference to the page or pages of the record where evidence of such fact is recorded.

The entirety of Husband's argument that the trial court erred in adopting Wife's parenting reads as follows:

The Trial Court approved the proposed Permanent Parenting Plan of the [Wife], versus that of [Husband], which included sole decision making by the [Wife] on religious matters. The Permanent Parenting Plan also provided for the [Wife] to receive the Federal Income Tax exemption, when the overwhelming proof evidenced that the [Husband] was paying well in excess of fifty percent (50%) of the childrens' living expenses; plus private school tuition at Webb School of Knoxville for the younger son and college tuition at Dartmouth for the elder. Doing so was an abuse of discretion.

As the above clearly reveals, Father failed to cite any authority that supports his argument on this issue; thus, he failed to comply with Tenn. R. App. P. 27(a)(7). Further, instead of including facts with citations to the record in support of his position, Father merely offers conclusions such as "the overwhelming proof of evidence" and "doing so was an abuse of discretion." Based on his failure to comply with these rules, Husband has waived this issue on appeal.[3]

## IV. OTHER MATTERS

Husband's remaining issues concern whether he was entitled to a separate hearing on the attorney fees claimed by Wife and whether he was entitled to a stay of execution on Wife's award of alimony *in futuro*. For her part, Wife requests an award of attorney fees on appeal.

---

[3] The record reveals that the child reached the age of majority in April 2017. The record does not disclose when the child will graduate from high school. Consequently, this issue may or may not be moot.

## A. Separate Hearing on Attorney Fees

Husband contends that the trial erred "in ruling that [Husband] was not entitled to a separate hearing on the attorney fees claimed by [Wife] and for which the Court awarded payment through alimony *in solido*, even though [Husband] specifically requested same during the trial." Contrary to Husband's assertion, the trial court did not award Wife attorney fees. Thus, a separate hearing on Wife's attorney fees is unwarranted where no attorney fees were awarded. Accordingly, this issue is without merit.

## B. Stay of Execution

Husband also contends that the trial court erred "in ruling that [Husband] was not entitled to a stay of execution on the Judgment and in particular, payment of the alimony *in futuro*, as [Wife] had not filed a Motion For Pendente Lite Support pending the appeal, and its ruling during the trial on alimony was based upon a 'comfortable lifestyle' standard, not upon actual need."

The order from which Husband assigns error was entered on July 26, 2016. Pursuant to Rule 7(a) of the Tennessee Rules of Appellate Procedure, Husband was entitled to file a motion for review of the trial court's order in the appellate court to which the appeal has been taken. Rule 7(a) provides:

> The motion for review shall be accompanied by a copy of the motion filed in the trial court, any answer in opposition thereto, any written statement of reasons given by the trial court for its action, and shall state: (1) the court that entered the order; (2) the date of the order; (3) the substance of the order, including the amount of any bond or other conditions of stay of execution; (4) the facts relied on, including the facts showing relief in the trial court is not practicable if a motion for the relief sought on review has not been presented to the trial court; (5) the arguments supporting the motion; and (6) the relief sought.

Tenn. R. App. P. 7(a).

Husband did not file a Rule 7 motion or timely seek review of the trial court's order for stay on appeal, and thus, his request for relief on stay at this point in the appeal is not timely. Accordingly, this issue has been waived.

## C. Attorney Fees on Appeal

Wife contends that Husband should be required to pay her attorney fees and costs of appeal for the necessity of defending this action. The decision to award attorney fees incurred on appeal is within the sole discretion of this court. *Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004). When determining whether an award for attorney fees is warranted, we consider, *inter alia*, the ability of the requesting party to pay his or her own attorney fees, that party's success on appeal, whether that party has acted in good faith, and whether an award of attorney fees is equitable. *Id.* In light of the entirety of the record, including the proceedings in this court, Wife's request for attorney fees on appeal is granted. Therefore, we remand this issue to the trial court to award Wife the reasonable and necessary attorney fees she incurred in this appeal.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed against Phillip Jay Seifert.

_____
FRANK G. CLEMENT, JR., P.J., M.S.